## PEOPLE v GOMOLAK

### Opinion of the Court

1. Criminal Law—Forensic Psychiatric Evaluation—Competency to Stand Trial—Substantive Right—Statutes—Court Rule.

A new section of the Code of Criminal Procedure, providing for a forensic psychiatric evaluation to determine the competency of a person accused of crime to stand trial, was given *legislative* effect years prior to defendant's trial and it, unaided by a court rule made procedurally effective after the trial, provided a substantive right (MCLA 767.27a; GCR 1963, 786).

2. Criminal Law—Appeal and Error—Forensic Psychiatric Evaluation—Competency to Stand Trial.

Denial by a trial judge of defendant's request for forensic evaluation when the case was called for trial constituted reversible error, as the trial judge should have held up commencement of the trial, not necessarily for days or any extended period of time, but simply long enough to hear and determine, formally upon proof with doctors called in to testify, the issue made by defendant under the act providing for a forensic psychiatric evaluation to determine the competency of a person accused of crime to stand trial (MCLA 767.27a).

3. Criminal Law—Forensic Psychiatric Evaluation—Competency to Stand Trial—Substantive Right—Statutes.

Statute provided a substantively justiciable right in favor of defendant to an order committing him to the custody of the center for forensic psychiatry for the performance of forensic psychiatric evaluation, provided he is able to show in the course of a formal judicial hearing that he may be incompetent to stand trial (MCLA 767.27a).

---

### References for Points in Headnotes

[1–3] 21 Am Jur 2d, Criminal Law §§ 65, 69.
[1–4] Investigation of present sanity to determine whether accused should be put, or continue, on trial.  142 ALR 961.
[4] 21 Am Jur 2d, Criminal Law §§ 66, 73.
[5, 6] 21 Am Jur 2d, Criminal Law § 64.

4. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—FORENSIC PSY-CHIATRIC EVALUATION—APPEAL AND ERROR—STATUTES—COURT RULE.

> Defendant's conviction should be reversed because he was not permitted to show that he was incompetent to stand trial and the case remanded for proceedings under a statute providing for a forensic psychiatric evaluation to determine the competency of a person accused of crime to stand trial, as implemented by court rule, and for further proceedings determinable by the outcome thereof; upon remand defendant will be entitled to move formally for a court-rule determination of his competency to stand trial as defined by that statute; if the determination is affirmative, defendant will stand for prompt retrial and, if negative, the trial judge will proceed as directed by a section of that statute regarding proceedings where a defendant may be incompetent to stand trial (MCLA 767.27a; GCR 1963, 786).

DISSENTING OPINION

T. E. BRENNAN, J.

5. CRIMINAL LAW—CONSTITUTIONAL LAW—PRETRIAL EXAMINATION—COMPETENCE TO STAND TRIAL.

> *Absent a request, there is no issue of a constitutional right to pretrial examination for competence to stand trial.*

6. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—DISCRETION—AD-JOURNMENT.

> *Trial judge did not abuse his discretion by failing* sua sponte *to adjourn a trial and order defendant examined for competence to stand trial, without a request for an examination.*

Appeal from Court of Appeals, Division 1, Lesinski, C. J., and J. H. Gillis and Beasley, JJ., affirming Wayne, James L. Ryan, J. Submitted September 16, 1971. (No. 46 June Term 1971, Docket No. 53,193.) Decided February 25, 1972.

28 Mich App 636 reversed.

Andrew Gomolak was convicted of first-degree murder. Defendant appealed to the Court of Ap-

peals. Affirmed. Defendant appeals. Reversed and remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *Daniel S. Seikaly,* Assistant Defender, for defendant on appeal.

PER CURIAM. If the professionally revered Henry Campbell Black's current ghost has it right, "forensic medicine" means (Black's Law Dictionary, 4th ed, p 777):

*"Forensic Medicine,* or medical jurisprudence, as it is also called, is 'that science which teaches the application of every branch of medical knowledge to the purposes of the law; hence its limits are, on the one hand, the requirements of the law, and, on the other, the whole range of medicine. Anatomy, physiology, medicine, surgery, chemistry, physics, and botany lend their aid as necessity arises; and in some cases all these branches of science are required to enable a court of law to arrive at a proper conclusion on a contested question affecting life or property.' Tayl. Med. Jur. 1."

In 1966, by PA 266, new section 27a was added to chapter 7 of The Code of Criminal Procedure (MCLA 767.27a; MSA 28.966[11]). We are concerned here with § 27a (1) (2) and (3):

"Sec. 27a. (1) A person accused of a crime who is incompetent to stand trial shall not be proceeded against while he is incompetent. A person is incompetent to stand trial within the meaning of this

section if he is incapable of understanding the nature and object of the proceedings against him, of comprehending his own condition in reference to the proceedings, or of assisting in his defense in a rational or reasonable manner.

"(2) The issue of competence to stand trial may be raised by the prosecuting attorney, defense counsel, by any interested person on leave of the court, or by the court on its own motion. The time and form of the procedure incident to raising the issue of competence shall be provided by court rule.

"(3) Upon a showing that the defendant may be incompetent to stand trial, the court shall commit the defendant in the criminal case to the custody of the center for forensic psychiatry or to any other diagnostic facility certified by the department of mental health for the performance of forensic psychiatric evaluation. The commitment shall be for a period not to exceed 60 days. Within that period the center or other facility shall prepare a diagnostic report and recommendations which are to be transmitted to the committing court.";

and with implementing GCR 1963, 786 (Mich Ct Rules Manual, 1969 ed, pp 11, 12 of 1971 pocket part), particularly .2 and .6:

".2 The issue of defendant's competence to stand trial may be raised during trial only by the trial court on its own motion.   *   *   *

".6 Where the issue of a defendant's competence to stand trial is raised during the trial by the court, the trial of the cause shall be continued or a mistrial declared as the court shall in its discretion deem appropriate."

A "resident babysitter," Jo Ann Young, and the defendant's 10-year-old daughter, Andrea Gomolak, testified in substance that at approximately midnight of December 21, 1968, they were waiting for Mrs. Gomolak to arrive from work; that Mrs.

Gomolak drove into her driveway and alighted from her car; that another car pulled into the driveway; that the defendant, Mrs. Gomolak's estranged husband, got out of that car and confronted Mrs. Gomolak; that an argument ensued and Mrs. Gomolak shook her head and began walking away; that defendant "pulled out a gun"; that at this stage Miss Young called the police, and, while doing so, heard four or five gunshots. Andrea, standing behind the window curtain also heard the shots.

No one actually saw the shooting. Mrs. Gomolak died prior to arrival at the hospital. Defendant was apprehended in Louisiana, waived extradition and was returned to Michigan.

Defendant was tried before a jury in the Wayne circuit, found guilty of first-degree murder and sentenced by Circuit Judge Ryan to a term of life imprisonment. Timely claim of appeal was filed by the court-appointed Defender's Association of Detroit. The conviction was affirmed (28 Mich App 636). Defendant, represented by the State Appellate Defender, filed timely application for leave to appeal. The application was granted February 22, 1971 (384 Mich 809).

Division 1 dealt only with defendant's contentions (a) that he was denied a continuance, the assigned ground for which was to ascertain his competency to stand trial, and (b) that he was denied the effective assistance of counsel. (28 Mich App at 637, 638.) On present appeal defendant's counsel states the first question as follows:

"Was it error to proceed against appellant when there was strong indication that he might have been incompetent to stand trial, without initially ordering a forensic examination as required by MCLA '48 Sec. 767.27A?"

The people counterstate:

"Did the Statutes (MCLA 768.20; MCLA 767.27a) and Court Rule 786 Mandate a forensic examination in addition to the psychiatric examination performed before trial by Dr. Behan?"

The direct way to expose the question thus submitted is to quote the beginning of a rather unusual colloquy that took place between defendant and the trial judge when the case was called for trial, and to quote the pith thereof as it ended. The discourse was gotten under way by defendant's assigned counsel:

"*Mr. Anderson:* Before proceeding, your Honor, the defendant has advised me he has a statement which he would like to make to the court. I have discussed this with him and advised him against making such a statement, but nonetheless, I feel that he has a right."

The assistant prosecutor announced that he had no objection but did interject:

"I am just wondering before the defendant makes any statement whether you ought to advise him of the *Miranda* rights and the consequences of what he might say to you on the record."

The trial judge carefully followed the prosecutor's suggestion. He advised defendant in detail of his right "to remain absolutely silent." The defendant told the judge that he understood fully, whereupon this record was made:

"*Defendant Gomolak:* Well, I don't believe that my case was thoroughly investigated like it should have been. One of the reasons that my arrest, my return to Michigan from Louisiana, all has a bearing on this case—my being here willingly, or unwillingly. I had a psychiatrist at the county jail

suggest that I have a forensic evaluation which hasn't been carried out. I had a psychologist, or a psychiatrist, one come to the courtroom or—not the courtroom, come to the jail and talk to me for a little while. I understand his report isn't back and certainly none of the people that knew me or worked with me that could have been any bearing on this case prior to why this could ever have happened, haven't been sought out and talked to and advised. I have a medical problem. I've got a heart condition and I'm very tight; especially, I'm nervous and upset—emotionally and physically I don't think I'm ready."

From this point on the defendant and the trial judge sparred back and forth through 11 pages of print, neither counsel taking part. The trial judge, understandably irked over the defendant's belated effort to gain more time for the various reasons assigned by him, sharply questioned defendant throughout the colloquy. Defendant, just as firmly but respectfully, held his ground and insisted like a thoroughly experienced veteran of the courtroom[1] upon his claimed right to have a "forensic examination"; upon his claimed right to have a more thorough "investigation" of the defense made by his counsel; upon his claimed right to have a copy of the court-appointed psychiatrist's report (which admittedly had not been made out or, if so, had not been delivered to defendant or his counsel); upon his claimed right to have the trial postponed because he had "a medical problem," plus several other rights of a technical nature alleged to have been denied him from extradition, arraignment,

---

[1] Which he was indeed, shown circumstantially by a continuous record of crime dating back to 1940 and ending with a 2–5 year prison sentence on April 19, 1966, from which he was paroled in March of 1968, the same year in which the homicide of his wife took place.

examination, psychiatric examination and on to the calling of the case for trial.

There is no mistaking Mr. Gomolak's knowledgeably calculated effort to obtain a statutory commitment to the forensic center, this having taken place near end of the duel:

*"The Court:* All right. I see no basis to delay the trial. Have a seat, sir, and call the jury.

*"Defendant Gomolak:* Well, your Honor, could I say one more thing?

*"The Court:* Yes.

*"Defendant Gomolak:* Could I ask you why, after the psychiatrist at the Wayne County Jail recommended and made the appointment to call my attorney, that I should have a forensic examination, why that was denied?

*"The Court:* No request has been filed with this court for a forensic examination.

*"Defendant Gomolak:* This lawyer didn't because he didn't think I needed it. The doctor suggested that I do have it.

*"The Court:* Your lawyer is an officer of the court; well respected, well trained.

*"Defendant Gomolak:* I have no quarrel with that.

*"The Court:* He represents to me that he has done what, in his judgment, is in your best interests. That is the limit of the court's inquiry."

It is notable that the quoted portion of the act of 1966 was not implemented by rule of court until GCR 1963, 786 was adopted May 15, 1969 and certified by the clerk May 21, 1969 (382 Mich xxxii, xxxiii).[2] Technically, until implemented "by court rule" under § 27a(2), it may be argued that § 27a (1), (2) and (3) had not been made procedurally effective in time for employment by or on behalf

---

[2] GCR 1963, 786 was published, pursuant to GCR 1963, 933, in the January 1969 issue of MSBJ, p 34.

of Mr. Gomolak, his trial having commenced May 13 and having ended May 14, 1969. However this may be, we are constrained to hold that new § 27a was given *legislative* effect years prior to this trial, that it unaided by rule provided a substantive right, and that the trial judge should have listened with greater care to Mr. Gomolak's twice declared insistence upon "a forensic examination that hasn't been carried out." He, the trial judge, should have held up commencement of the trial, not necessarily for days or any extended period of time, but simply long enough to hear and determine, formally upon proof with Doctors Behan and Notts[3] called in to testify, the issue made by Mr. Gomolak under the act of 1966.

True, defendant made no "written motion" within Rule 786.1. He did nonetheless make his desire known on the record of the court and, balancing technicalism against technicalism, it must be admitted that Rule 786 was not in effect at the time. We conclude on these grounds that the rather summary denial by the trial judge of defendant's request for forensic evaluation constituted reversible error, disregarding of course any independent conviction that Mr. Gomolak really showed himself *forensically* ready for trial by the way he handled himself before Judge Ryan. Such an independent judgment is not, we add, for this Court or any Justice thereof. It is for the trial judge, subject only to review. There is no such judgment to review. *To recapitulate:*

The record shows that defendant Gomolak committed another of these many tolerisms of the times, that is, a cold blooded murder. The jury so found

---

[3] Dr. Notts was the psychiatrist at the jail, to whom Mr. Gomolak referred in the course of his colloquy with Judge Ryan. Dr. Behan was the court-appointed psychiatrist.

on abundantly persuasive and altogether sufficient proof. Yet he like so many of his kind didn't receive from the judicial system all of his *"constitutional rights,"* and so must his case go back to the trial court for another judicial try. *Pate* v *Robinson,* 383 US 375; 86 S Ct 836; 15 L Ed 2d 815 (1966), presses too hard on the courts of the states for the slightest departure from its rule that "Robinson was constitutionally entitled to a hearing on the issue of his competence to stand trial." (383 US at 377.)

Obedient to the compulsion of *Pate* it is ruled that the act of 1966 provided a substantively justiciable right, in favor of Mr. Gomolak, to an order committing him "to the custody of the center for forensic psychiatry" for the "performance of forensic psychiatric evaluation," *provided* he is able to show in the course of a formal judicial hearing that he *"may* be incompetent to stand trial." Since he was not permitted to make such a showing, however vain it may have been had his quoted request gone to a fair distinguished from hasty hearing, the result is reversible error.

Reversed and remanded for proceedings under section 27a as now implemented by Rule 786, and for further proceedings determinable by the outcome thereof. Upon remand the defendant will be entitled to move formally for a Rule 786 determination of his "competence to stand trial as defined in Act No. 266 of the Public Acts of 1966." If the determination is affirmative, defendant will stand for prompt retrial. If negative, the trial judge will proceed as directed by section 27a(3).

T. M. KAVANAGH, C. J., and BLACK, ADAMS, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred.

T. E. Brennan, J. (*dissenting*). I dissent. The majority assumes that there was a request for forensic psychiatric evaluation. There was no request for such evaluation.

My Brother talks about "Mr. Gomolak's twice declared insistence upon 'a forensic examination that hasn't been carried out.'"

Defendant told the judge that a psychiatrist in the jail had suggested or recommended an evaluation. The record does not show that such recommendation or suggestion had ever been communicated to the court, except by defendant's hearsay statement on the morning of trial.

Defendant did not request an examination. He asked why he had not had an examination. The judge told him why he had not had an examination.

Absent a request, there is no issue of a constitutional right to pretrial examination for competence to stand trial.

All that remains is the question of whether the trial judge abused his discretion by failing *sua sponte* to adjourn the trial and order the defendant examined, without a request. I find none. I would affirm.