## PEOPLE v OVERBY

1. CRIMINAL LAW—RIGHT TO PROCEED IN PROPRIA PERSONA.

A defendant who unequivocally states that he wishes to represent himself has an absolute right to proceed *in propria persona,* unless to do so would conflict with the interest of the public in ensuring a fair trial, where a proper request for such is made before the commencement of trial.

2. CRIMINAL LAW—APPOINTED COUNSEL—DISMISSAL BY DEFENDANT.

The trial judge did not err in failing to dismiss defendant's appointed counsel upon the request of defendant before trial where defendant did not want to proceed *in propria persona,* but wanted another attorney appointed to defend him.

3. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—DENIAL OF HEARING.

There is no reversible error on the part of the trial court in denying defendant a forensic psychiatric evaluation to determine his competence to stand trial, where all of the evidence adduced showed the defendant to be capable of understanding the nature and object of the proceedings against him, of comprehending his own condition in reference to the proceeding, and of assisting in his defense in a rational and reasonable manner, and where no notice of a plea of insanity had been filed at least four days prior to trial as required by statute (MCLA 768.20).

Appeal from Wayne, Theodore R. Bohn, J. Submitted Division 1 May 5, 1972, at Detroit. (Docket No. 10708.) Decided July 24, 1972.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 310.

Right of defendant in criminal case to conduct defense in person or to participate with counsel. 17 ALR 266, supplemented in 77 ALR2d 1233.

[2] 7 Am Jur 2d, Attorneys at Law § 138. *et seq.*

[3] 21 Am Jur 2d, Criminal Law § 45 *et seq.*

Howard Overby was convicted of assault with intent to commit murder and armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Manuel Zechman,* for defendant.

Before: V. J. BRENNAN, P. J., and McGREGOR and BRONSON, JJ.

McGREGOR, J. At a jury trial, defendant was convicted of assault with intent to commit murder, MCLA 750.83; MSA 28.278, and armed robbery, MCLA 750.529; MSA 28.797. Acting *in propria persona,* defendant filed a motion for a new trial based only on the alleged failure of the people to establish venue, which was denied by the trial court. It should be noted that in this motion there was no claim of error because defendant was not given the right to conduct his own trial, because of the alleged incompetency of his attorney, or because he was not afforded a forensic psychiatric evaluation. Defendant appeals his conviction as a matter of right.

Factually, the record shows that, late in the afternoon of January 20, 1969, defendant entered a market, approached the manager of the store, and asked to be waited on. The manager proceeded to ring up the sale of a bottle of liquor which defendant had picked up. After completing this sale, the manager turned away and began talking to a stockboy. At this point, defendant hit him

over the head with the butt of a gun. Defendant then proceeded to the front of the store where he demanded money from the cashiers. As the injured store manager approached the front of the store, defendant suddenly turned and shot four or five times in the manager's direction, hitting him in the shoulder. Defendant was seen as he left the store with a gun in one hand and money in the other. He crossed the store parking lot and entered a car driven by codefendant Betty MacIntosh. Defendant was unequivocally identified as a participant in the above events by nine witnesses who saw defendant at the scene of the crime.

Among alleged errors, the defendant contends that he was not given a fair trial and afforded a defense within the meaning of the provisions of Const 1963, art 1, § 20, which states:

"In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than 12 jurors in all courts not of record; to be informed of the nature of the accusation; to be confronted with witnesses against him; to have compulsory process for obtaining witnesses in his favor; to have assistance of counsel for his defense; to have an appeal as a matter of right; and in courts of record, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal."

Defendant's allegations of error must be considered in light of the issues which are specifically raised, namely (1) whether the trial court committed reversible error in refusing to permit defendant to conduct his own defense upon request when defendant had repeatedly expressed dissatisfaction with his court-appointed counsel, (2) whether reversible error was committed when the trial court denied defendant an examination (forensic psychi-

atric evaluation) to determine his sanity, and (3) whether reversible error was committed when defendant was denied the use of process for the purpose of producing certain witnesses to testify in his behalf.

The critical facts may be summarized: On April 9, 1969, the day prior to trial, defendant's court-appointed counsel informed the trial judge that the defendant would like his sanity examined. Defendant's counsel indicated that he believed defendant was able to distinguish between right and wrong, but nevertheless wished a ruling from the court on defendant's behalf. Defendant indicated that he was dissatisfied with the way his attorney was conducting his defense and did not feel his attorney was interested in his defense. The trial court adjourned at this point without making any ruling or comment in response to defendant's statements.

The case was reconvened on April 10, 1969. At that time, defendant stated that he felt his attorney was against him and was only interested in freeing his codefendants. Defendant indicated that he had talked to his attorney but once in preparation for trial, and that on this morning his attorney had told him that he (the defendant) did not understand the case and would be tried whether he liked it or not. Defendant informed the court that he had $200 due in income tax refund money, which he would use to pay his appointed attorney to do what he wanted him to do. Defendant's impression was that "his" attorney was in court to get his two codefendants turned loose.

At this point the court asked defendant if he wanted to assist his court-appointed attorney in conducting the defense. Defendant replied that he would like another attorney to be appointed who

would represent him and not someone else, indicating that he would rather have the assistance of his own attorney than to assist the court-appointed attorney in his defense. He also indicated that he would be able to assist another attorney in his defense. The court denied the defendant's request for appointment of another counsel, indicating that defendant as an indigent was not entitled to counsel of his own choosing.

Early in the trial, during the *voir dire* conducted on defendant's behalf by his court-appointed counsel, defendant's counsel stated to the court that defendant wished to enter a plea of temporary insanity despite counsel's belief that defendant was rational and intelligent. Counsel also indicated that defendant wished certain witnesses to be subpoenaed but that counsel had explained to the defendant that the court could not subpoena witnesses from the State of Georgia. At that point defendant stated:

"Speaking in my own behalf, your Honor, I would like to ask the court to enter this also. The Constitution of the State of Michigan, section 13, a citizen in any court in this state has the right to prosecute or defend any suit. I know I don't have much education, but since it seems, and it should seem to the court that I have no defense counsel that will agree with me on anything in this matter, and he is going to be forced on me, I ask that this part of the Constitution apply to me also and I will do the best I can in defending myself."

In response to defendant's request to defend himself, the court stated that it would rely on appointed counsel, without responding to defendant's comment on the Michigan Constitution.

Defendant's attorney then informed the court that, in his opinion, the jury was satisfactory insofar as defendant's interests were concerned. At

that point, the following courtroom colloquy occurred:

> "*Defendant Overby:* May I understand one thing that is not clear, if it please this court. Would the court please at this time explain section 13 of the Constitution of the State of Michigan to me and make it clear to me what it means.
>
> "*Mr. Zechman:* I will explain it to him, your Honor.
>
> "*Defendant Overby:* I would like for the court to do this.
>
> "*The Court:* This is in connection with representation by counsel?
>
> "*Defendant Overby:* It is, your Honor.
>
> "*The Court:* You have been furnished with an attorney. He is a competent attorney. He is recognized as a competent attorney both by the court and the Bar of Michigan. The court doesn't appoint an attorney upon choice. It is an attorney who will competently represent you in the trial of a criminal case. The court is satisfied that Mr. Zechman can competently represent you in the trial of this case. You will, therefore, have to let Mr. Zechman handle the trial of your case."

During the further course of the trial, the defendant's attorney stated that efforts had been made to contact the witnesses sought by defendant, but that they were either unavailable or their whereabouts were unknown. At one point in the proceedings, prior to the time defendant took the stand in his own behalf, he was permitted to confer with an attorney of his choice, Oliver Nelson. At the close of trial, defendant was asked if he was satisfied with the conduct of his court-appointed attorney during trial. He stated:

> "I would like to state one thing, there was some friction to begin with but I think Mr. Zechman since the case has proceeded as it has, has done everything that I think he could have possibly done. I think he has one motion he would like to make. I think he has done

everything he could have done under the circumstances, but there was some friction to start. Maybe I was wrong on my part. I apologize. I am sorry. I would like to apologize. * * * "

This Court has held that Michigan statutory and constitutional provisions would give a defendant who unequivocally stated that he wanted to represent himself (thereby waiving his right to be represented by an attorney) an absolute right to represent himself, provided defendant's request to act *in propria persona* occurred before the commencement of trial. *People v Payne,* 27 Mich App 133 (1970). The identical issue as in the instant matter was decided by this Court in *People v Kirkland,* 40 Mich App 22 (1972). In *Kirkland,* this Court ruled that the trial court was within its rights in requiring defendant to continue at trial with court-appointed counsel despite defendant's comments to the effect that he wished to proceed *in propria persona.* Kirkland told his trial judge that he would like to represent himself because he did not have confidence in his attorney and did not trust him.

Defendant in the instant matter is a 53-year-old man who has had considerable experience with criminal law; despite his lack of formal education, the record and comments made by the defendant during the proceedings indicate that the defendant has acquired a substantial knowledge of criminal proceedings. The situation here is not what could be called an impasse on a crucial issue, as in *People v Charles O Williams,* 386 Mich 565 (1972). There, the reason given by the defendant for new counsel was an irreconcilable difference of opinion with his counsel on whether to call certain alibi witnesses.

The record does not establish any request by the

defendant prior to trial to proceed *in propria persona,* but rather a dissatisfaction with his court-appointed counsel.

"The right of the accused to represent himself at trial is not absolute when it conflicts with the interest of the public in ensuring a fair trial. * * *
"A careful examination of the record here of neces- sity leads us to the conclusion that the defendant did not unequivocally request that he be permitted to conduct his own defense and the trial court did not err in allowing previously assigned counsel to continue to represent the defendant during his trial. Compare *United States ex rel Maldonado v Denno,* 348 F2d 12, 15–16 (CA 2, 1965), *cert den* 384 US 1007; 86 S Ct 1950; 16 L Ed 2d 1020 (1966); *People v Henley, supra* [382 Mich 143 (1969)]." *People v Kirkland, supra.*

During the course of the proceedings, defendant, through his appointed counsel, stated that he wished to put his sanity in issue. Defendant's attorney indicated that in his opinion defendant was a rational human being. The trial court had ample grounds to hold that defendant was competent to stand trial without a forensic psychiatric evaluation. This determination was correctly made. Defendant's actions, evidenced both by his words on the record and his correspondence in the lower court file, support the trial court's decision.

Defendant quotes the recent decision in *People v Gomolak,* 386 Mich 540 (1972), in support of his claim of trial error when he was denied a forensic psychiatric evaluation to determine his competency to stand trial. We do not agree. There was no strong indication that defendant might be incompetent to stand trial, as required by MCLA 767.27a; MSA 28.966(11). Defendant's almost brilliant discussion of his opinion as to the incompetency of his attorney belies the need of a forensic

psychiatric evaluation to determine the defendant's competency to stand trial. All of the evidence adduced showed the defendant to be capable of understanding the nature and object of the proceedings against him, of comprehending his own condition in reference to the proceedings, and of assisting in his defense in a rational and reasonable manner. There was no showing of defendant's incompetency to stand trial. If, on the showing made here, this defendant were held to be entitled to delay his trial for a forensic psychiatric evaluation, then every criminal defendant who so requests would likewise be entitled to such examination. Michigan law requires that a notice of a plea of insanity must be filed at least four days prior to trial. MCLA 768.20; MSA 28.1043. There was no reversible error here on the part of the trial court.

Defendant requested the production of certain witnesses in order to conduct his defense. His counsel made efforts to contact and secure the attendance of these witnesses at trial, but apparently did not require their attendance by use of process. The witnesses were not produced at trial.

A thorough examination of the record and briefs of counsel discloses no reversible error.

Affirmed.

All concurred.