PEOPLE v ANDERSON

PEOPLE v OVERBY

Docket Nos. 56278, 55536, 55537. Argued November 4, 1976 (Calendar Nos. 5, 6).—Decided December 21, 1976.

The right of a defendant to proceed *in propria persona* after a disagreement between himself and his attorney is the common issue in these appeals.

Donny R. Anderson was convicted by a jury in Kent Circuit Court, George V. Boucher, J., of armed robbery. On the day of his trial Anderson asked the court to remove his court-appointed counsel and stated that he wished to represent himself and have more time to prepare because he believed the attorney was not making every effort on his behalf because he had discovered a United States Supreme Court case which his counsel had not raised. The trial court denied the motion to remove defense counsel. The Court of Appeals, Holbrook, P. J., and T. M. Burns and R. L. Smith, JJ., reversed per curiam (Docket No. 17272). The people appeal.

Howard L. Overby was convicted by a jury in Wayne Circuit Court, Theodore R. Bohn, J., of assault with intent to commit murder and armed robbery. Overby's court-appointed attorney explained on the first day of trial that a conflict had arisen between himself and the defendant. The defendant repeatedly expressed dissatisfaction with his attorney but the trial court refused to permit Overby to proceed *in propria persona.* The Court of Appeals, V. J. Brennan, P. J., and McGregor and Bronson, JJ., affirmed (Docket No. 10708). Defendant appeals.
*Held:*
    1. The right of self-representation secured by both Constitu-

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 8] 21 Am Jur 2d, Criminal Law § 310.
    Right of defendant in criminal case to conduct defense in person, or to participate with counsel. 77 ALR2d 1233.
[3, 5, 7] 21 Am Jur 2d, Criminal Law §§ 316, 317.
    Duty to advise accused as to right to assistance of counsel. 3 ALR2d 1003.
[6] 21 Am Jur 2d, Criminal Law § 319.
[9] 21 Am Jur 2d, Criminal Law § 320.

tion and statute does not guarantee an absolute right to proceed to trial without counsel.

2. The following requirements should be met before the trial court grants a defendant's request to dismiss his counsel and proceed *in propria persona* to support the imperative that criminal adjudications must proceed in an orderly fashion and result in trustworthy determinations of guilt without impermissibly infringing on the constitutional right to act as one's own counsel: (1) The defendant's request to discharge his counsel and represent himself must be unequivocal. (2) The trial court must also determine that the defendant is asserting his right knowingly, intelligently, and voluntarily. The trial court must make the defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open. (3) Finally, the trial judge must determine that allowing the defendant to act as his own counsel will not unduly inconvenience and burden the court and the administration of the court's business.

3. The existence of a knowing and intelligent waiver of the right to the assistance of counsel depends in each case upon the particular facts and circumstances, including the background, experience, and conduct of the accused. The record shows that defendant Anderson was not competent to waive his right to the assistance of counsel knowingly and voluntarily. Defendant Overby, on the other hand, made an unequivocal request to proceed as his own counsel and asserted his right knowingly, intelligently, and voluntarily. The trial court apparently denied Overby's motion on the sole basis that his court-appointed counsel was competent. The refusal to allow Overby to represent himself was, therefore, reversible error.

Justice Ryan, joined by Justice Levin, in a separate opinion, concurred in the reasoning and result in *People v Overby* and in the result, but not the reasons, in *People v Anderson.* The conclusion that Anderson was not competent to waive his right to counsel knowingly and voluntarily is an unwarranted factual determination drawn from remarks by Anderson which, while they may be inarticulate, confusing, lacking in clarity, and even senseless, do not demonstrate his incompetence in the sense of lack of mental capacity. However, the trial judge did not commit reversible error in refusing Anderson's request. The request to proceed for himself was essentially an afterthought to his expressed desire that his appointed counsel be removed. It was contingent upon the allowance of additional time to

prepare for trial and was not unequivocal, a traditional requirement for such a request.

Reversed and conviction reinstated as to defendant Anderson. Reversed and remanded for a new trial as to defendant Overby.

55 Mich App 317; 222 NW2d 226 (1974) reversed.

42 Mich App 1; 201 NW2d 303 (1972) reversed.

OPINION OF THE COURT

1. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE—CONSTITUTIONAL LAW.

The right of self-representation secured by both Constitution and statute does not guarantee an absolute right to proceed to trial without counsel (US Const, Am VI; Const 1963, art 1, § 13; MCL 763.1; MSA 28.854).

2. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE—CONSTITUTIONAL LAW.

To represent himself and conduct his own defense, an accused must knowingly and intelligently forego the traditional benefits associated with the right to counsel; he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

3. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE.

In a criminal case in which the accused wishes to conduct his own defense, the trial judge should inform him of the dangers and disadvantages of self-representation and seek affirmatively to establish on the record that the accused knows what he is doing and that his choice is made with eyes open; the record should show whether the defendant is literate, competent, and understanding of the choice which confronts him and voluntarily exercising his informed free will.

4. CRIMINAL LAW—TRIAL—DISCHARGE OF COUNSEL—CONDUCT OF OWN DEFENSE.

A defendant's request to discharge counsel and proceed on his own can be granted only if accompanied by an unequivocal statement by the defendant that he wishes to represent himself (Const 1963, art 1, § 13; MCL 763.1; MSA 28.854).

5. CRIMINAL LAW—CONSTITUTIONAL LAW—ASSISTANCE OF COUNSEL—WAIVER.

The existence of a knowing and intelligent waiver of the right to counsel depends in each case upon the particular facts and

circumstances, including the background, experience, and conduct of the accused.

6. CRIMINAL LAW—TRIAL—DISCHARGE OF COUNSEL—CONDUCT OF OWN DEFENSE.

Refusal of a trial court to allow a defendant to discharge his court-appointed counsel and conduct his own defense is reversible error in a case where the defendant's motion was unequivocal; he asserted his right knowingly, intelligently and voluntarily; the defendant demonstrated in discussing his request with the trial court that he was competent to proceed *in propria persona;* and the court apparently denied the defendant's motion on the sole basis that his court-appointed counsel was competent.

CONCURRING OPINION

LEVIN and RYAN, JJ.

7. CRIMINAL LAW—TRIAL—ASSISTANCE OF COUNSEL—WAIVER.

*Remarks by a defendant which demonstrate that he did not understand that "new evidence" does not include a Supreme Court case and that he was incapable of expressing himself to convey adequately to the court the point he was attempting to make do not support the conclusion that the defendant was incompetent, in the sense of lack of mental capacity, to waive his right to the assistance of counsel knowingly and voluntarily.*

8. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE.

*A defendant's technical legal knowledge, as such, is not relevant to an assessment of his knowing exercise of the right to defend himself.*

9. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE.

*Refusal of a trial court to allow a defendant to discharge his court-appointed counsel on the day set for trial and conduct his own defense was not erroneous where the defendant's request was not unequivocal but was contingent on a request for additional time to prepare, and the trial court found that the defendant was not prepared to try the case alone.*

*Frank J. Kelley,* Attorney General, and *Robert A. Derengoski,* Solicitor General, for the people.

*Harold S. Sawyer,* Prosecuting Attorney, and

*Donald A. Johnston, III,* for the people in *Anderson.*

*William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Research, Training & Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people in *Overby.*

*Gillard & Gillard* for defendant Anderson.

*State Appellate Defender Office* (by *Barbara R. Levine)* for defendant Overby.

LINDEMER, J. These cases present the issue of when and under what circumstance a defendant may properly dismiss his attorney and assert his right to represent himself.

On November 9, 1972, defendant Anderson was charged with armed robbery. MCLA 750.529; MSA 28.797. The trial was held on January 30 and 31, 1973, following which the jury returned a verdict of guilty as charged. Defendant was sentenced to from 7 years and 6 months to 20 years in prison.

On the first day of defendant Anderson's trial, but prior to the selection of a jury, the defendant replied as follows to the court's inquiry as to whether he wished to represent himself:

"Yes. Not at this moment. I wish to represent myself and have a little more time to get affiliated with the case."

Defendant Anderson predicates his appeal on the trial court's refusal to permit him to discharge his attorney and proceed with the trial *in pro per.* The Court of Appeals found merit in defendant's contentions and reversed and remanded for a new

trial. 55 Mich App 317; 222 NW2d 226 (1974). We reverse and reinstate the conviction.

Defendant Overby and two codefendants were charged with armed robbery, MCLA 750.529; MSA 28.797 and assault with intent to commit murder, MCLA 750.83; MSA 28.278. The jury convicted him on both counts and he was sentenced to serve 15-to-30 years incarceration on each count, the sentences to be concurrent.

During voir dire, and after he had expressed certain reasons for his dissatisfaction with his appointed counsel, defendant Overby addressed the court, quoted the applicable provision of the Michigan Constitution, and requested permission to defend himself. Error is predicated upon the trial court's refusal to grant this request. The Court of Appeals saw no merit in this argument and affirmed the conviction. 42 Mich App 1; 201 NW2d 303 (1972). We reverse and remand for a new trial.

The right of self-representation under Michigan law is secured by both Constitution and statute. Const 1963, art 1, § 13 reads: "A suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper person or by an attorney". MCLA 763.1; MSA 28.854 provides: "On the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself, and he shall have a right to produce witnesses and proofs in his favor, and meet the witnesses who are produced against him face to face". The United States Supreme Court has held that this right is also implicitly guaranteed in the Sixth Amendment to the United States Constitution. *Faretta v California,* 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975). None of these provisions, however, guarantees an absolute right to proceed to trial without counsel.

In *People v Henley,* 382 Mich 143, 148–149; 169 NW2d 299 (1969), wherein the defendant moved to dismiss his attorney and represent himself after the trial was well underway, we held that under Michigan law the defendant's right to do so was a qualified one, and that the trial judge should exercise his discretion.

The question presented in *Faretta* was whether a constitutional right to self-representation should be recognized. Questions associated with administering the right during the course of the litigation were not addressed. However, the Court carefully noted the circumstances under which Faretta was deprived of his constitutional right to conduct his own defense. The circumstances, affirmatively shown by the record, involved a clear and unequivocal request, weeks before trial, by a literate, competent, and understanding individual. In *People v Holcomb,* 395 Mich 326, 335; 235 NW2d 343 (1975), we reversed and remanded for a new trial; there was no affirmative showing, as there was in *Faretta,* that the defendant was "literate, competent, and understanding, and that he was voluntarily exercising his informed free will".

The foregoing cases suggest that several requirements should be met before a defendant's request to dismiss his counsel and proceed in proper person is granted.

First, the request must be unequivocal. This requirement will abort frivolous appeals by defendants who wish to upset adverse verdicts after trials at which they had been represented by counsel. This requirement of "unequivocality" is well established in the courts of this state and others, with many of the decisions relying on *United States, ex rel Maldonado v Denno,* 348 F2d 12, 15 (CA 2, 1965). See, *e.g., People v Payne,* 27 Mich App 133; 183 NW2d 371 (1970).

Second, once the defendant has unequivocally declared his desire to proceed *pro se* the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily. *Faretta, supra,* 422 US 835; *Holcomb, supra,* at 337. The trial court must make the *pro se* defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open. *Id.* Defendant's competence is a pertinent consideration in making this determination. *Westbrook v Arizona,* 384 US 150; 86 S Ct 1320; 16 L Ed 2d 429 (1966). But his competence does not refer to legal skills, "[f]or his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself". *Faretta, supra.*

The third and final requirement is that the trial judge determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business. The people would have us announce a guideline which would preclude the assertion of the right to proceed without counsel if it is not made before the trial begins. We cannot accede to this request. Although the potential for delay and inconvenience to the court may be greater if the request is made during trial, that will not invariably be the case.

The foregoing requirements do not impermissibly infringe on the constitutional right to act as one's own counsel. Importantly, they do support the imperative that criminal adjudications must proceed in an orderly fashion and result in trustworthy guilt determinations.

Defendant Anderson indicated that he wanted his assigned counsel dismissed for "lack of evi-

dence". The court, in an attempt to discover what "new evidence" made it impossible for assigned counsel to continue in the case, engaged the defendant in this colloquy:

> *"The Court:* You say you are aware of new evidence?
>
> *"The Defendant:* Yes.
>
> *"The Court:* What is that?
>
> *"The Defendant:* I mean, like, I came across a little piece of evidence of the Supreme Court.
>
> *"The Court:* A case?
>
> *"The Defendant:* Yes, a case.
>
> *"The Court:* Some decision by the United States Supreme Court?
>
> *"The Defendant:* That is correct.
>
> *"The Court:* And what about that?
>
> *"The Defendant:* I mean, the case concerned of Jessie James, the mask ruling of it.
>
> *"The Court:* Would you stand up, sir? What?
>
> *"The Defendant:* The mask ruling of Jessie James' case concerning the Supreme Court, the waiving of the masked bandit.
>
> *"The Court:* The waiving of a masked bandit?
>
> *"The Defendant:* Yes.
>
> *"The Court:* All right. Is that your only piece of new evidence?
>
> *"The Defendant:* Yes."

Neither defendant nor his present counsel have been able to cite the so-called "mask ruling of Jessie James' case concerning the Supreme Court" on appeal.

The above exchange reveals that defendant was not competent to waive his right knowingly and voluntarily.

Defendant Overby's situation is different. First, his request to proceed as his own counsel was unequivocal. After indicating several reasons for

his dissatisfaction with appointed counsel, defendant addressed the court as follows:

"Speaking in my own behalf, Your Honor, I would like to ask the court to enter this also. *The Constitution of the State of Michigan, § 13, a citizen in any court in this state has the right to prosecute or defend any suit.* I know I don't have much education, but since it seems, and it should seem to the court that I have no defense counsel that will agree with me on anything in this matter, and he is going to be forced on me, *I ask that this part of the Constitution apply to me also and I'll do the best I can in defending myself."* (Emphasis supplied.)

At the close of jury selection, Overby stated that he wanted an additional juror removed and that his attorney had refused. He then asked the court to clarify his right to self-representation. The judge told Overby that he had a competent attorney, that Overby wasn't entitled to counsel of his own choice, and that he would have to let appointed counsel handle the trial.

Second, the record demonstrates that defendant Overby asserted his right knowingly, intelligently and voluntarily. The *Faretta* requirement of a "knowing, intelligent and voluntary" relinquishment of the traditional benefits associated with the right to counsel when a defendant asserts his right to proceed as his own counsel stems from the language in *Johnson v Zerbst,* 304 US 458, 464–465; 58 S Ct 1019; 82 L Ed 1461 (1938). In *Johnson,* the Court indicated that the existence of a knowing and intelligent waiver must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused. Here, the trial court did not explicitly inform defendant Overby of the dangers and disadvantages of self-

representation. However, the sophisticated and comprehensive nature of defendant Overby's expressed reasons for dissatisfaction with his appointed counsel, together with his history of personal involvement with the criminal justice system, indicates that he knew what he was doing and made his choice with eyes open.

Finally, it does not appear that defendant Overby's acting as his own counsel would disrupt, unduly inconvenience and burden the court and the administration of the court's business. Rather, the trial court apparently denied Overby's motion on the sole basis that his court-appointed counsel was competent.

Because we find that the trial court's refusal to allow Overby to represent himself is reversible error, we do not reach the other issues he raises on appeal.

The Court of Appeals in *People v Anderson* is reversed and defendant Anderson's conviction is reinstated. The Court of Appeals in *People v Overby* is reversed and the case is remanded for a new trial.

KAVANAGH, C. J., and WILLIAMS, COLEMAN, and FITZGERALD, JJ., concurred with LINDEMER, J.

LEVIN, J., concurred with LINDEMER, J., as to *People v Overby.*

RYAN, J. I concur in the Court's reasoning and result in the case of the *People v Overby* and in the result reached in *People v Anderson.* I write separately because I am unable to subscribe to the reasons assigned for affirming Anderson's conviction.

After enunciating our newly defined test for dealing with requests by defendants to proceed *pro*

*se,* my Brother Lindemer examines a portion of the colloquy between the defendant Anderson and the court and concludes therefrom that "the above exchange reveals that defendant was not competent to waive his right [to counsel] knowingly and voluntarily".

I must disassociate myself from that conclusion because I believe it is an unwarranted factual determination.

In holding that the exchange between the court and Anderson, quoted in the majority opinion, reveals that the defendant is not competent to waive his right to an attorney, the Court appears to conclude that Anderson's statements concerning a "so-called 'mask ruling of Jessie James' case concerning the Supreme Court'" and other statements are so bizarre and nonsensical as to demonstrate that he is lacking in the requisite mental capacity to knowingly and voluntarily waive his right to an attorney. That is indeed a momentous conclusion to reach solely upon a reading of the short colloquy quoted. There may well be justification for concluding therefrom that the remarks demonstrate that Anderson will be unable to capably and effectively conduct his own defense but, as the majority observes, competence does not refer to legal skills "[f]or his technical legal knowledge as such [is] not relevant to an assessment of his knowing exercise of the right to defend himself". *Faretta v California,* 422 US 806, 836; 95 S Ct 2525; 45 L Ed 2d 562 (1975).

To me, the exchange demonstrates no more than that Anderson did not understand that "new evidence" does not include a Supreme Court case and that he was incapable of expressing himself in an artful and articulate way in order to convey adequately to the court the point he was attempting

to make. While it may be fair to characterize his remarks as inarticulate, confusing, lacking in clarity and even senseless, it is speculative indeed to conclude therefrom that they demonstrate Anderson's incompetence, in the sense of lack of mental capacity, to knowingly and voluntarily waive his right to the assistance of counsel.[1]

For a different reason, however, I conclude that the trial judge did not commit reversible error in refusing Anderson's request to dismiss his counsel.

The colloquy between the defendant and the court was as follows:

*"The Court:* Mr. Anderson?

*"Mr. Holst:* Stand up.

*"The Defendant:* Your Honor, I would like to have Mr. Holst removed from this case for lack of evidence.

*"The Court:* Why?

*"The Defendant:* I mean, I have my own personal feelings about Mr. Holst.

*"The Court:* What are those, sir?

*"The Defendant:* I don't think he has put forth every effort that he has to see that justice is being done in this case.

*"The Court:* Are you prepared to hire your own attorney, sir?

*"The Defendant:* No, I am not at this time.

*"The Court:* Are you prepared to represent yourself at this trial?

*"The Defendant:* Yes, that is what I—

*"The Court:* I beg your pardon?

*"The Defendant:* Yes.

---

[1] It is interesting to note that in assigning his reasons for denying the defendant's request, the trial judge did not, as does the majority, conclude that the defendant was not "competent" to knowingly and voluntarily waive the assistance of counsel. Instead, the court denied Anderson's request for the reasons that his assigned counsel was "one of the most competent and experienced defense lawyers in this part of the state" and that Anderson was "not prepared to proceed to try the case alone this morning".

*"The Court:* You wish to represent yourself?

*"The Defendant:* Yes. Not at this moment. I wish to represent myself and have a little more time to get affiliated with the case.

*"The Court:* Thank you, sir.

\* \* \*

*"The Court:* Why didn't you bring this motion to the attention of the Court before the morning of trial, Mr. Anderson?

*"The Defendant:* I just got aware of some evidence concerning this case and I can't—I really don't feel that justice can be held in this case.

*"The Court:* You say you are aware of new evidence?

*"The Defendant:* Yes.

*"The Court:* What is that?

*"The Defendant:* I mean, like, I came across a little piece of evidence of the Supreme Court.

*"The Court:* A case?

*"The Defendant:* Yes, a case.

*"The Court:* Some decision by the United States Supreme Court?

*"The Defendant:* That is correct.

*"The Court:* And what about that?

*"The Defendant:* I mean, the case concerned of Jessie James, the mask ruling of it.

*"The Court:* Would you stand up, sir? What?

*"The Defendant:* The mask ruling of Jessie James' case concerning the Supreme Court, the waiving of the masked bandit.

*"The Court:* The waiving of a masked bandit?

*"The Defendant:* Yes.

*"The Court:* All right. Is that your only piece of new evidence?

*"The Defendant:* Yes.

*"The Court:* Have you talked to Mr. Holst about this case?

*"The Defendant:* Yes."

When Anderson's statements to the court are examined in context, it becomes evident that his

request to proceed *pro se* was essentially an afterthought to an expressed desire that Mr. Holst be removed from the case. The idea of self-representation was suggested to the defendant by the trial judge and concurred in by the defendant but conditioned upon a concomitant request by the defendant for an adjournment to enable himself to become "affiliated with the case" and to find new evidence.

The request to proceed *pro se* was not unequivocal which, as the majority points out, is a traditional requirement for such a request. *United States ex rel Maldonado v Denno,* 348 F2d 12, 15 (CA 2, 1965). See, *e.g., People v Payne,* 27 Mich App 133; 183 NW2d 371 (1970).

Reluctance on the part of many defendants to face the reality on trial day morning that the moment of truth is at hand is a familiar fact of life in the criminal justice system. Experienced trial judges, such as the able judge in this case, are thoroughly familiar and regularly confronted with trial day adjournment requests, advanced for countless reasons and frequently coupled with parallel and conditional requests to discharge counsel and proceed *pro se.*

The trial judge recognized just such a circumstance before him in this case and, after examining both the defendant and his counsel, carefully concluded:

*"The Court:* All right, sir. Thank you. It appearing that we are now at the morning of trial, that Mr. Holst is one of the most competent and experienced defense lawyers available in this part of the state, he is thoroughly prepared to try this case, *that Mr. Anderson is not prepared to proceed to try the case alone this morning,* and that no good reason has been shown for relieving him from his responsibility to the court in this

respect, the motion to remove Mr. Holst as defense counsel is denied."

If Anderson's request to proceed to trial *pro se* had been unequivocal, the trial judge's observations about the preparedness and competence of defendant's trial counsel would not have justified the denial of such request. However, the court correctly found that Anderson's request to represent himself was contingent upon the allowance of additional time to prepare for trial, which the trial court did not, and was not obliged to, allow. Consequently, the defendant failed to invoke the procedures outlined by the majority and the trial judge's refusal to dismiss defendant's counsel was not error.

LEVIN, J., concurred with RYAN, J.