# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TANICA LAMARR EGGLESTON,

      Defendant-Appellant.

UNPUBLISHED
November 19, 2015

No. 322710
Oakland Circuit Court
LC No. 2013-248294-FH

Before: SERVITTO, P.J., and WILDER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of third-degree fleeing and eluding, MCL 257.602a(3), resisting and obstructing a police officer (resisting and obstructing), MCL 750.81d(1), fourth-degree child abuse, MCL 750.136b(7)-(8), and operating a motor vehicle with a suspended or revoked license, MCL 257.904(3)(b). The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 4 to 40 years imprisonment for the third-degree fleeing and eluding conviction, 2 to 15 years for the resisting and obstructing a police officer conviction, and 226 days, time served, for the fourth-degree child abuse and operating a motor vehicle with a suspended or revoked license convictions. We affirm defendant's conviction, but remand for further proceedings pursuant to *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (Docket No. 149073, issued July 29, 2015).

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a traffic incident. Officer Kenneth Rochon of the Southfield Police Department saw a blue Chevrolet Impala speeding and weaving through traffic. Rochon followed the car and activated his siren, attempting to conduct a traffic stop. The driver of the vehicle would not pull over, and instead fled, reaching speeds of 50 to 55 miles per hour in a residential area with a speed limit of 25 miles per hour. Rochon eventually stopped the vehicle with a "pit maneuver," which involves striking the rear of a fleeing car with the front of a police car. The driver exited the car and continued to flee on foot. Rochon chased him, and with the assistance of other officers, caught and arrested him. After the chase ended, police discovered

-1-

that a five-year-old girl had been in the back of the car throughout the incident. At trial, Rochon testified that defendant was the driver.

Defendant originally entered a no contest plea pursuant to a *Cobbs*[1] agreement. However, the trial court determined that it would sentence defendant to a longer sentence than provided for in the agreement, and offered defendant the opportunity to withdraw his plea, which defendant did. Defendant represented himself at trial, and was convicted. After his trial, defendant submitted a motion for a new trial, arguing that because he did not knowingly, intelligently, and voluntarily waive his right to counsel, any such waiver was ineffective. The trial court denied his motion, stating that it had substantially complied with all requirements for allowing defendant to represent himself.

At sentencing, defendant was scored 10 points for offense variable (OV) 4 (serious psychological injury to the victim), MCL 777.34(2). Defendant was sentenced as described above. This appeal followed.

## II. WAIVER OF COUNSEL

Defendant argues that he did not effectively waive his right to counsel and that the trial court erred in allowing him to represent himself. We disagree. We review for clear error the trial court's factual findings underlying a waiver of counsel, but review de novo, as a question of law, the issue of whether defendant's waiver of counsel was knowing, intelligent, and voluntary. See *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). Clear error is present "when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013) (citation omitted).

Both the United States and Michigan Constitutions provide that a criminal defendant may waive his right to representation by counsel and represent himself. See *Faretta v California*, 422 US 806, 95 S Ct 2525, 45 L Ed 2d 562 (1975); Const 1983, art 1, § 13; MCL 763.1. Valid waiver of the right to counsel requires that a trial court make three findings, as articulated in *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976). First, "the waiver must be unequivocal." *Williams*, 470 Mich at 642, citing *Anderson*, 398 Mich at 367. Second, the waiver must be "knowingly, intelligently, and voluntarily made," and to ensure these requirements are met, the trial court should inform a defendant of the potential risks of self-representation. *Id*. Third, the court must be satisfied that the defendant will not be unduly disruptive of the judicial proceedings. *Id*. Similar requirements are set forth in MCR 6.005(D)-(E). These requirements need not be read as a "litany," rather, "substantial compliance" is adequate to safeguard a defendant's rights. *People v Russell*, 471 Mich 182, 191; 684 NW2d 745 (2004). "[W]hether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id*. at 201.

---

[1] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

Of these requirements, defendant asserts only that he did not receive adequate warning of the risks of self-representation, and therefore that his waiver was not knowingly, intelligently, and voluntarily made. The record reveals that the trial court substantially complied with the law regarding waiver of counsel under the facts of this case. First, the court engaged in a colloquy with defendant prior to trial, clearly communicating that defendant could potentially face a life sentence if convicted. It also warned defendant that self-representation is "not always the best way to go." Even if, arguendo, this was a weak warning, any such weakness is not dispositive. The essential question is always whether the waiver was knowing, intelligent, and voluntary, and this may be determined without "explicitly informing [a defendant] of the dangers and disadvantages of self-representation." See *Anderson*, 398 Mich at 370-371. For example, the *Anderson* defendant did not require such a warning partly because of his "history of personal involvement with the criminal justice system," including the fact that he had represented himself on two previous occasions and once won. *Id*. Likewise, in the instant case, defendant stated that he had previously defended himself and won. The *Anderson* Court also pointed out that the defendant's "sophisticated and comprehensive" complaints about his attorney demonstrated an understanding of the law that suggested that he was competent to waive counsel. *Id*. Similarly, in the instant case, defendant demonstrated a reasonably sophisticated knowledge of the law by stating that he planned to exercise his right to remain silent, and that he wished to call a witness in his defense, and by filing pretrial motions. During trial, he made an opening statement, cross-examined all prosecution witnesses, objected to at least one question and the admission of at least one exhibit, and gave a closing argument. Defendant's experience with and knowledge of the law further confirm that, in the context of the "particular facts and circumstances surrounding [this] case," when defendant waived his right to counsel, he did so knowingly, intelligently, and voluntarily. See *Russell*, 471 Mich at 201.

Based on these facts, the trial court found that defendant's waiver was knowing, intelligent, and voluntary, and that defendant had "some knowledge of legal activities." See *id*. at 191. There was significant support for the trial court's findings of fact, and there is no basis in the record for this Court to find that the trial court erred when it found that defendant knowingly, intelligently, and voluntarily waived his right to counsel. See *Russell*, 471 Mich at 191; *Williams*, 470 Mich at 640.

III. SENTENCING

Defendant further argues that the trial court erred in assessing 10 points for OV 4. We disagree, but hold that in light of our Supreme Court's decision in *Lockridge*, a *Crosby*[2] remand, rather than resentencing, is appropriate.

Ten points should be assessed under OV 4 when a victim's "serious psychological injury may require professional treatment." MCL 777.34(2). In making this determination, "[t]he fact that treatment has not been sought is not conclusive." MCL 777.34(2). The facts justifying the score of an OV must be found by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Here, trial testimony and information in the pre-sentence

---

[2] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

information report (PSIR) supported the score of 10 points for OV 4. Specifically, there was evidence that the child was frightened and crying after the car chase, that she was now afraid to ride in cars, and that she now "hated" defendant. See *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012). See also *People v Waclawski*, 286 Mich App 634, 681; 780 NW2d 321 (2009). The trial court thus did not err in scoring this variable.

Nonetheless, remand for consideration of defendant's sentence is required by *Lockridge*. In *Lockridge*, the Court held that in order to avoid any Sixth Amendment violations, Michigan's sentencing guidelines scheme was to be deemed advisory, instead of being mandatory. *Id*. at __ (slip op at 28). The concern is that when a judge makes findings of fact "beyond facts admitted by the defendant or found by the jury" in a sentencing proceeding that increases a defendant's minimum sentence, this runs afoul of a defendant's right to a jury trial. *Id*. at __ (slip op at 1). As a result, the guidelines no longer can be considered mandatory, but sentencing judges must consult the guidelines and " 'take them into account when sentencing.' " *Id*. at __ (slip op at 28), quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

In determining whether there is any plain error under this new scheme, the first inquiry is whether the facts admitted by the defendant and the facts necessarily found by the jury "were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id*. at __ (slip op at 32). If the answer is "yes," then a defendant cannot establish any plain error. *Id*. at __ (slip op at 32). If the answer is "no," then a remand to the trial court is required to allow it to determine whether, now aware of the advisory nature of the guidelines, the court would have imposed a materially different sentence. *Id*. at __ (slip op at 34). If the court determines that it would have imposed a materially different sentence, then it shall order resentencing. *Id*. at __ (slip op at 34).

In this case, defendant can satisfy the plain error analysis of *Lockridge*. Proof of the victim's fright, fears, or feeling toward defendant was not an element of any of the offenses of which defendant was convicted. Those factors were neither found by the jury nor admitted by defendant. If the points for OV 4 were not scored, defendant's sentence would be outside the guidelines recommendation. Therefore, defendant's "guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment" and defendant is entitled to remand procedures. *Lockridge*, ___ Mich at ___; slip op at 32.

"[A]ll defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to remand to the trial court for further inquiry[,]" i.e., a "*Crosby*" remand. *Lockridge*, slip op at 33. Because defendant's current OV score is not supported by facts necessarily found by the jury or admitted by defendant, we conclude that such a remand is compelled by *Lockridge*. On remand, the trial court should determine whether it would have imposed a "materially different" sentence if it had been aware of the advisory nature of the guidelines. *Id*., slip op at 34. Our Supreme Court set forth the requirements for a *Crosby* remand as follows:

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not

received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Id*., slip op at 35-36.]

Affirmed as to defendant's convictions. Remanded with regard to defendant's sentence. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra