# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
June 16, 2016

V

LEON VENEGAS, JR.,

Defendant-Appellant.

No. 325380
Ingham Circuit Court
LC No. 13-000927-FH

Before: SAWYER, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of domestic violence, third offense, MCL 750.81(4), and unlawful imprisonment, MCL 750.349b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 60 to 200 months for the domestic violence conviction and 144 to 360 months for the unlawful imprisonment conviction. We affirm.

## I. FACTUAL BACKGROUND

Defendant was charged with domestic violence (third offense), unlawful imprisonment, and witness retaliation, MCL 750.122(8), arising out of a physical altercation with his then-girlfriend, Angela Baker. On the date of the altercation, Baker drove defendant to a park. Defendant was drinking alcohol and argued with Baker about leaving the park. According to Baker, defendant grabbed her keys, her keyring broke, and she sustained a cut finger. Roughly two hours later, she and defendant drove to the hospital, where Baker received two stitches for the laceration on her finger. She went to the police department the next day and reported the incident.

During the course of the proceedings below, Baker's testimony about the altercation changed in several respects. At the preliminary examination, Baker denied that defendant put his hands on her during the altercation. She also denied that defendant had threatened her or attempted to influence her testimony in any way. But Baker later admitted that her testimony at the preliminary examination was untruthful. Contrary to her prior testimony, she indicated that defendant had physically assaulted her at the park, threatened her, and prevented her from leaving for several hours, only permitting her to drive to the hospital after she promised she would not call the police. As a result, the prosecution entered an immunity agreement with

Baker under MCL 780.701. In exchange for her promise to testify truthfully at trial, Baker was granted immunity regarding her perjurious testimony at the preliminary examination.

At an early pretrial conference, the prosecution informed the trial court that defendant had attempted to use other jail inmates' calling cards to contact Baker, in direct contravention of the district court's order that defendant have neither phone privilege nor any form of contact with Baker. The prosecution played a recording of a phone call between another inmate and the mother of defendant's child; its purpose was to induce the mother to relay information to Baker. As a result, the trial court revoked defendant's bond and phone privileges.

Defendant was represented by three different appointed attorneys in the trial court, and he made several requests to represent himself. At a bond hearing, defendant asked to represent himself after the trial court denied his request to appoint new counsel. He repeatedly interrupted the trial court and continued to press his arguments after the trial judge had announced her ruling. After ignoring the trial court's instruction for him to remain silent, defendant was held in contempt. While he was being removed from the courtroom, defendant went on a profanity-ridden tirade. He cast aspersions at the court and its officers, accused them of racism, and referred to the trial judge as "bitch."

Before trial, the defense sought to subpoena recordings of certain prison telephone conversations between defendant and Baker that took place while defendant was incarcerated in the Ottawa County jail on unrelated charges. At a bond hearing, defendant's appointed counsel informed the court that he was having difficulty serving the subpoena. Defendant requested substitute counsel, contending that his new counsel had done nothing for him and had lied to his family. The trial court denied defendant's request, reasoning that defendant had not shown a breakdown in the attorney-client relationship.

Defendant proceeded to trial twice. At the outset of defendant's first trial, defendant pointed out that counsel had still not obtained the phone calls from Ottawa County. The trial court noted that the parties had discussed the matter and that defense counsel had decided against using the calls on the ground that their content would be prejudicial to defendant. Counsel stated that he understood that in one call Baker stated that the charges in this case were "payback" for defendant's act of wrecking her truck. Counsel acknowledged that such evidence could be viewed as exculpatory, but he contended that other exculpatory evidence existed and stated that evidence that defendant had been incarcerated for other charges would be prejudicial to defendant. Defendant again requested the appointment of substitute counsel. The trial court denied the request. Thereafter, defendant briefly considered representing himself, but he ultimately decided to proceed with counsel.

Following deliberations after the first trial, the jury acquitted defendant of witness retaliation but was unable to reach a verdict on the remaining charges. At the conclusion of the second trial, a jury convicted him of the remaining charges.

This appeal followed.

## II. ANALYSIS

### A. SELF-REPRESENTATION

Defendant first argues that the trial court violated his constitutional right to self-representation when it denied his requests to represent himself. We disagree.

We review for an abuse of discretion a trial court's decision regarding a defendant's request to represent himself. *People v Hicks*, 259 Mich App 518, 521; 675 NW2d 599 (2003). As discussed in *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013):

> The right of self-representation is secured by both the Michigan Constitution, Const 1963, art 1, § 13, and by statute, MCL 763.1. The right of self-representation is also implicitly guaranteed by the Sixth Amendment of the United States Constitution. *People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976). To invoke the right of self-representation: (1) a defendant must make an unequivocal request to represent himself, (2) the trial court must determine that the choice to proceed without counsel is knowing, intelligent, and voluntary, and (3) the trial court must "determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." *Id*. at 367-368.

The trial court also must comply with the requirements of MCR 6.005. *People v Williams*, 470 Mich 634, 642; 683 NW2d 597 (2004).

Defendant made several requests to represent himself throughout the proceedings in the trial court. The record demonstrates that defendant's pattern was to react and seek to represent himself only when he seemed dissatisfied with a statement by counsel or a ruling from the trial court. At the beginning of the first trial, the trial court engaged in an extensive discussion with defendant regarding the seriousness of the charges he faced and the difficulties of representing himself. Defendant decided to continue with counsel. This discussion substantially complied with *Anderson* and MCR 6.005(D).

When defendant renewed his request to represent himself at the start of his second trial, again after receiving an unfavorable ruling from the court, the trial court responded as follows:

> *THE DEFENDANT*: I want to fire my attorney.
>
> *THE COURT*: Denied. Have a seat.
>
> *THE DEFENDANT*: Well, I'll represent myself then, how about that?
>
> *THE COURT*: Have a seat, how about that? Now, you can either behave, sir, in this courtroom and have a trial with your presence or you can have a trial without your presence. That's my ruling. Have a seat.

Although the trial court stated no findings in support of its ruling, it is clear from the record that, in light of defendant's identical request at the outset of the first trial, the trial court had concluded

-3-

that defendant's request was not serious and that, accordingly, further consideration under *Anderson* and MCR 6.005(D) was unnecessary. It is also clear from the trial court's comments that it was concerned that defendant's proposed self-representation posed a significant danger of disrupting the administration of the court's business, i.e., defendant's jury trial. Given defendant's outrageous behavior during pretrial proceedings, and his disregard for prior court orders, we believe that the trial court's concern in that regard was well founded. Thus, we conclude that the trial court did not abuse its discretion by denying defendant's request to represent himself.

## B. SUBSTITUTE COUNSEL

Defendant also argues that the trial court erred by denying his repeated requests for substitute counsel. We disagree.

"A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion," which occurs when the trial court's decision is outside the range of principled outcomes. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (quotation marks and citation omitted). The right to counsel is guaranteed by both the Fifth and Sixth Amendments to the United States Constitution, US Const, Ams V and VI; Const 1963, art 1, §§ 17 and 20. The state must appoint counsel for an indigent defendant who requests counsel, *People v Jackson*, 483 Mich 271, 278; 769 NW2d 630 (2009), but an indigent defendant is not entitled to choose his own counsel, *People v Russell*, 471 Mich 182, 192 n 25; 684 NW2d 745 (2004) ("Defendant did not have the *right* to a third appointed counselor, because no defendant is entitled to the appointed counselor of his choice."). The appointment of substitute counsel is warranted only if the defendant shows good cause and if substitution of counsel would not unreasonably disrupt the judicial process. *Strickland*, 293 Mich App at 397.

Defendant argues that his trial counsel's refusal to honor his request to obtain and use the Ottawa County telephone calls constituted a serious disagreement regarding trial strategy that destroyed the attorney-client relationship and warranted the appointment of substitute counsel. We disagree. "Counsel's decisions about defense strategy, including what evidence to present and what arguments to make, are matters of trial strategy, and disagreements with regard to trial strategy or professional judgment do not warrant appointment of substitute counsel." *Id.* at 398 (footnotes omitted). Accordingly, the trial court did not abuse its discretion by denying defendant's requests to appoint a fourth attorney.

## C. EFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that trial counsel rendered constitutionally ineffective assistance by failing to obtain the Ottawa County telephone calls. We disagree.

Because defendant did not move for a new trial or an evidentiary hearing in the trial court, and this Court denied defendant's motion to remand, our review is limited to errors apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

-4-

Pursuant to this Court's earlier order,[1] however, we have deemed recordings of the Ottawa County calls to be part of the record on appeal.

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. A defendant must also show that the result that did occur was fundamentally unfair or unreliable. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

"A substantial defense is one that could have affected the outcome of the trial." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

Defendant argues that trial counsel's failure to obtain the Ottawa County phone calls constituted ineffective assistance because it deprived him of a substantial defense, i.e., it prevented the jury from hearing Baker state that her allegations in the instant case were "payback" and thus deprived him of the opportunity to attack Baker's credibility.

We conclude that trial counsel did not render ineffective assistance. Counsel's decision to not use the Ottawa County phone calls to prevent the jury from learning that defendant was incarcerated on other charges constituted trial strategy.. Defendant wanted counsel to impeach Baker with her statement that the charges in the instant case constituted "payback" for defendant wrecking her truck. On cross-examination, however, defense counsel impeached Baker with her testimony from the preliminary examination and the first trial, and demonstrated that her testimony at the second trial was substantially different from what she gave previously. And as we have already explained, in context, the "payback" comment has little or no impeachment value.

Moreover, defendant's argument fails to recognize that the Ottawa County recordings contain a great deal of *in*culpatory material. Defendant argues that such material might have been excluded under MRE 403 as more prejudicial than probative. We will not, however, substitute our own judgment on that strategic decision for the judgment of defendant's trial counsel. See *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Indeed, given the risk of an adverse evidentiary ruling, we conclude that counsel's trial strategy was prudent. The Ottawa County recordings contain defendant's admissions that (1) he was first imprisoned for an offense when he was 19 years old, (2) he was incarcerated in Ottawa County for gun-related charges, (3) he was drinking on the evening in question and has a substance abuse problem, and (4) while at the park with Parker, he placed his hands on her throat and pushed her, leaving bruises. Additionally, defendant's overall tone toward Baker in the recordings is both profane and verbally abusive. There are hints of former domestic violence, and at one point

---

[1] *People v Venegas*, unpublished order of the Court of Appeals, entered November 18, 2015 (Docket No. 325380)

Baker accuses him of leaving scars on her face in a former incident. She also states that she is afraid of defendant, that he threatened to kill her and her dog on the evening in question, and that he repeatedly said, "I should break every bone in your body." Finally, in the recordings, defendant openly asks Baker to refuse to testify, advising her that disobeying her subpoena would not subject her to criminal prosecution. Hence, defendant has not overcome the presumption that counsel's refusal to offer the recordings as evidence was reasonable trial strategy.

## D. DUE PROCESS

Finally, defendant argues in his Standard 4 brief that he was denied due process because the prosecutor used false testimony to obtain his convictions. We disagree.

Because defendant failed to raise this issue in the trial court, our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). A person cannot be deprived of life, liberty, or property without due process of law. US Const, Ams V, XIV; Const 1963, art 1, § 17; *People v Bearss*, 463 Mich 623, 629; 625 NW2d 10 (2001). "What process is due in a particular proceeding depends upon the nature of the proceeding, the risks and costs involved, and the private and governmental interests that might be affected." *People v Pitts*, 222 Mich App 260, 263; 564 NW2d 93 (1997).

It is well-settled that the prosecution's knowing use of perjured testimony to secure a conviction violates the defendant's rights to a fair trial and due process, but the remedy for such a violation—reversal of the conviction and remand for retrial—is only necessary where the perjured testimony "is material to the defendant's guilt or punishment." *People v Aceval*, 282 Mich App 379, 389-393; 764 NW2d 285 (2009). A prosecutor must disclose the giving of false testimony by a government witness and must correct false evidence when it arises. *People v Smith*, 498 Mich 466, 475-477; 870 NW2d 299 (2015).

Defendant asserts that testimony given by Baker and her father, which indicated that Baker had a black eye following the incident at the park with defendant, was actually false because the police report did not mention a black eye and the photos taken by the police did not show that Baker had a black eye. Defendant contends that the false testimony was material because it related directly to the charge of domestic violence, and he asserts that the prosecutor knew that the testimony was false because at the preliminary examination the police officer who took a statement from Baker did not report that Baker had a black eye. Defendant emphasizes that the prosecutor did not correct the false testimony given by Baker and her father, and concludes that this false testimony resulted in the jury convicting him of domestic violence.

Defendant's argument is meritless. Baker stated that that she sustained a cut lip that turned black and blue at some point after the incident, and that she "ended up" with a black eye. On cross-examination, her father stated that Baker's eye appeared black to him, further stating that her skin was discolored underneath her eye and around her cheek bone. A fair reading of Baker's testimony indicates that bruising developed on her lip and eye after some time had passed. It is possible that the bruising had not yet fully developed when Baker spoke to the police and had her picture taken. Thus, defendant has not established that the testimony given by Baker and her father regarding the condition of Baker's eye was actually false, let alone that the

prosecution knew such testimony to be false. Therefore, defendant's instant claim of error necessarily fails.

Affirmed.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder