# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRIAN WAYNE ALEXANDER,

Defendant-Appellant.

UNPUBLISHED
July 11, 2017

No. 328571
Macomb Circuit Court
LC No. 2014-003072-FH

Before: GADOLA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a jury trial, of breaking and entering a building with the intent to commit larceny, MCL 750.110, and larceny in a building, MCL 750.360. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 1-1/2 to 10 years' imprisonment for the breaking and entering conviction, and 1-1/2 to 15 years' imprisonment for the larceny conviction. We affirm.

The jury convicted defendant of breaking and entering a factory building owned by Peerless Metal Works in Warren, Michigan, during the late evening hours of June 19, 2014. The prosecution presented the testimony of the owner and his associate who were still in the factory after closing, as well as a responding police officer. According to the trial testimony, the two men observed defendant rummaging through a workbench inside the factory and confronted him. Defendant hid behind a machine before eventually coming out. Defendant was wearing a Peerless Metal company logo t-shirt that had been in a back office on a coat hanger; the company's computer equipment was also housed in that office. To gain access to that office, it was necessary to open a closed internal door. Inside that office, computer equipment had been disturbed and stacked in a neat pile.

The police were called and, despite the owner's instructions, defendant left the building, stating that he was leaving the same way he entered. Defendant had entered the factory through an opened bay door after wiggling his way through a small opening in an attached gate. The police quickly arrived and approached defendant at a nearby corner. He was still wearing the company shirt and two company tools were discovered during a search of his bag. The defense theory at trial was that no "breaking" occurred, and that defendant only went inside the open bay door of Peerless Metal to obtain employment. Defendant testified on his own behalf and denied

-1-

that he touched the computer equipment, opened a door to obtain the shirt, or took any tools from Peerless Metal.

## I. SELF-REPRESENTATION

Defendant was permitted to represent himself at trial, with his appointed attorney serving as standby advisory counsel. Defendant now argues that structural error occurred because the trial court failed to secure a valid waiver of his right to counsel by complying with the requirements set forth in MCR 6.005(D) and *People v Anderson*, 398 Mich 361, 367; 247 NW2d 857 (1976). We disagree.

Because defendant never challenged the validity of his pretrial waiver of counsel in the trial court, this claim is unpreserved. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Therefore, appellate relief is foreclosed unless defendant is able to establish a plain error affecting his substantial rights. *Id*.

The United States and Michigan Constitutions guarantee a defendant's right to the assistance of counsel at trial. US Const, Am VI; Const 1963, art 1, § 20; *People v Russell*, 471 Mich 182, 187-188; 684 NW2d 745 (2004). To waive the right to counsel the defendant's waiver "must be knowing, voluntary, and intelligent." *Id*. at 188 (citation omitted). Courts make every presumption against the waiver. *Id*. A trial court's factual findings regarding a waiver are reviewed for clear error. *Id*. at 187.

When confronted with a defendant's initial request for self-representation, a trial court must determine, under standards established in *Anderson*, that:

> (1) the defendant's request is unequivocal, (2) the defendant is asserting the right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. [*Russell*, 471 Mich at 190.]

A trial court must also satisfy the requirements of MCR 6.005(D). *Russell*, 471 Mich at 190. This court rule provides that a trial court may not permit the defendant's initial waiver of the right to counsel without:

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

But a trial court is not required to follow a "litany approach" to establish compliance with the requirements of *Anderson* and MCR 6.005(D). See *Russell*, 471 Mich at 191. It is sufficient for the trial court to substantially comply with the substantive requirements. *Id*. While the trial

court must be certain that the requirements for a proper waiver are met, superficial irregularities will not give rise to an "appellate parachute." *Id*. Once a defendant waives his right to counsel, a trial court is obligated to reaffirm the waiver at any subsequent proceedings in accordance with MCR 6.005(E).

This case involves defendant's self-representation only at trial, although, like the prosecution, we have considered not only what occurred at trial, but the hearings leading up to trial, to determine whether the trial court substantially complied with the waiver requirements. With regard to the first requirement established by *Anderson*, 398 Mich at 367, defendant's repeated affirmations of his intention to represent himself on all three days of trial clearly establish that his request for self-representation was unequivocal. On this record, there is no question that defendant's request for self-representation was unequivocal. We reach this same conclusion with respect to the second *Anderson* requirement, that defendant asserted his right to self-representation in a knowing, voluntary and intelligent manner. *Id*. at 368. The trial court questioned defendant about his knowledge of the court rules, and inquired if he had a court rules book, or a rules of evidence book. When defendant responded that he knew those rules only "vaguely," and did not have either of the books, the trial court cautioned him that he would be expected to "follow each and every rule," warned him that there would be "no advantage" because he was representing himself, and explained that he would be required to "follow the rules of evidence as they apply to the entire process." Defendant consistently affirmed his decision to proceed without counsel, and it is clear from the record that defendant wanted to control his case, although he worked with standby counsel. The trial court was not required to pressure defendant into relinquishing his right to waive counsel. See *People v Morton*, 175 Mich App 1, 7; 437 NW2d 284 (1989) (recognizing that where a defendant exercises his right to defend himself, the defendant "need not be badgered and pressured at every turn to give up his right to defend himself."). Where defendant reaffirmed his intention to represent himself after he was told that he would be expected to follow applicable rules of procedure and evidence, we are satisfied that defendant gave a knowing, intelligent, and voluntary assertion of the right to self-representation. Substantial compliance with the second *Anderson* requirement was satisfied.

We also conclude that there was substantial compliance with the third *Anderson* requirement, even though the trial court did not make an express determination that defendant would not disrupt, unduly inconvenience, or burden the court and the administration of the trial court's business. Although the potential for undue disruptions existed because of defendant's lack of legal training, the record clearly establishes that the trial court adequately accounted for this factor by requiring defendant to comply with the rules and procedures of the court and by warning defendant on more than one occasion that he was expected to follow the rules and ensuring he had the assistance of standby counsel.

As defendant observes, the trial court did not advise him of the charges against him and the maximum possible prison sentence at trial, as required by MCR 6.005(D)(1). However, the mere fact that a judge does not discuss the charges and possible penalties with a defendant is not enough to defeat a finding of substantial compliance with the waiver procedures. *People v Adkins (After Remand)*, 452 Mich 702, 731; 551 NW2d 108 (1996), overruled on other grounds by *People v Williams*, 470 Mich 634, 641 n 7; 683 NW2d 597 (2004). In challenging this requirement, defendant fails to acknowledge the numerous exchanges between himself and the trial court in prior hearings, particularly the prior plea proceeding. At the plea hearing, defendant

pleaded guilty to both charges of breaking and entering a building with intent to commit larceny and larceny in a building. Therefore, it is difficult to fathom that defendant was unaware of the charges. Further, the trial court asked defendant if he "underst[oo]d the maximum penalty [it] can impose could be any number of years up to life?" Defendant responded, "I do." At the sentencing hearing, defendant ultimately withdrew his plea, but before doing so, the trial court, the attorneys, and defendant engaged in a lengthy discussion about the presentence investigation report and the sentencing guidelines. In response to one of defendant's comments, the trial court commented that "the appropriate punishment should be forty-six months in the State Prison[,]" and again informed defendant that he was facing a "life [sentence]." Thus, the record establishes that defendant was aware of the seriousness of the charges. "A waiver is sufficient if the defendant knows what he is doing and his choice is made with eyes open." *Williams*, 470 Mich at 642 (quotation marks and citation omitted). Taken as a whole, the record demonstrates that defendant knew the perils of self-representation and was willing to assume the risk. Further, the trial court complied with MCR 6.005(D)(2) by offering defendant the opportunity to consult with his appointed lawyer, which defendant accepted. Defendant remained assisted by standby counsel during trial, and standby counsel advised defendant on several occasions on the record, even making certain arguments on defendant's behalf, and questioned defendant when he testified. In sum, "[d]efendant was fully apprised of the risks he faced by choosing to represent himself and he knowingly and voluntarily choose to accept them. He may not now be heard to complain about his choice." *Williams*, 470 Mich at 645. Accordingly, defendant has not established any basis for relief with respect to this issue.

## II. JURY INSTRUCTIONS

Defendant also argues that the trial court denied him a fair trial when responding to the jury's question during deliberations regarding whether the fence was part of the building that defendant entered. Defendant contends that the trial court erred by merely redirecting the jury to M Crim JI 25.1. We disagree.

Claims of instructional error are reviewed de novo. *People v McMullan*, 284 Mich App 149, 152; 771 NW2d 810 (2009). Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 584-585; 556 NW2d 820 (1996) (citations omitted). Jury instructions are reviewed in their entirety to determine whether any error requiring reversal occurred. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). A defendant is entitled to have the jury decide his guilt or innocence after considering every essential element of the charged offense. *Id.* An imperfect instruction will not, however, warrant reversal if the instructions, examined as a whole, fairly presented the issues to be tried and sufficiently protected the defendant's rights. *Id.* at 501-502.

Defendant claims that the trial court's responsive instruction was incorrect under *People v Jacques*, 456 Mich 352, 358; 572 NW2d 195 (1998), in which the Michigan Supreme Court, construing the statutory language of MCL 750.111, stated that "a fence is not a structure that may be entered into." Defendant contends that the trial court should have instructed the jury that, in this case, the fence outside of the building was not a part of the building, and accordingly, there could be no breaking of the building as a result. In *Jacques*, the defendant was convicted of entering without breaking, MCL 750.111, after he gained access to an enclosed soda distribution center by sliding under the fence "surrounding the center through a six- to eight-inch

-4-

depression in the ground," and stealing four crushed pop cans that were within the fenced area. *Id.* at 353. The Michigan Supreme Court reversed the defendant's conviction, concluding that where the defendant crawled under a fence, this did not constitute the crime of entry without breaking. The *Jacques* Court explained that "a structure [as contemplated by MCL 750.111] must be something that one may physically enter into[,]" and that one may not physically enter into a fence. *Id.* at 358.

Even if we were to accept defendant's claim that the trial court's response to the jury was in some way erroneous, an error in instructing the jury is presumed to not warrant reversal, and defendant bears the burden of proving otherwise. MCL 769.26; *People v Lukity*, 460 Mich 484, 495, 496; 596 NW2d 607 (1999). This Court will only reverse if, " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Id.* at 495-496, quoting MCL 769.26. Importantly, apart from whether defendant committed a "breaking" when he wiggled his way through the chained fence, there was evidence that once inside the factory, he opened an interior office door and stole a company shirt and was trying to take computer equipment. For purposes of the offense of breaking and entering with the intent to commit larceny, "any amount of force used to open a window or door, no matter how slight, is sufficient to constitute a breaking," *People v Toole*, 227 Mich App 656, 659; 576 NW2d 441 (1998), and "a breaking of an inner portion of a building constitutes the requisite element for burglary." *Id.* (Citation omitted.) Because defendant was not lawfully permitted to enter the factory or the office inside, opening the interior door of the office was sufficient to satisfy the element of breaking. We are satisfied that the jury instructions, examined as a whole, fairly presented the issues to be tried and sufficiently protected defendant's rights.[1]

## III. INVALID SENTENCE

Defendant, who withdrew his initial plea of no contest, argues that he is entitled to be resentenced because the trial court imposed a harsher sentence as punishment for his decision to exercise his right to a jury trial. We disagree.

Because defendant did not raise this issue at sentencing or in an appropriate post-sentencing motion, this issue is unpreserved, and therefore, our review is limited to plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764.

"A sentencing court cannot base its sentence on a defendant's decision to exercise his constitutional right to a jury trial." *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011). However, "it is not per se unconstitutional for a defendant to receive a higher sentence following a jury trial than he would have received had he pleaded guilty." *Id.* (Citation omitted.)

---

[1] The present case is distinguishable from this Court's recent decision in *People v Bush*, 315 Mich App 237; 890 NW2d 370 (2016), where in this case, defendant was not charged with first-degree home invasion, MCL 750.110a(2), and defendant did not lawfully enter the premises before breaking and entering into the enclosed office.

As part of an earlier plea agreement, the trial court had agreed to sentence defendant to 10 months in jail, plus three years' probation. Defendant later withdrew his plea. Following his jury trial convictions, the trial court sentenced defendant to concurrent prison terms of 18 months to 10 years for the breaking and entering conviction, and 18 months to 15 years for the larceny conviction. However, the record in this case does not support defendant's argument that the trial court imposed the 18-month minimum sentences to penalize defendant for proceeding to trial. In an apparent response to defendant's allocution, the trial court indicated that defendant would have received only 10 months in jail if he had not withdrawn his plea, but he "wanted [his] trial, we've had a trial, now the jury's decided." The trial court stated that it would impose a "fair sentence," and not be "vindictive to anyone who's exercised their right to have a trial[,]" but expressed that defendant would not be given the same leniency as one who admits and accepts responsibility. These remarks do not indicate that the trial court imposed a harsher sentence because defendant exercised his right to a jury trial, but merely that defendant was not entitled to the benefit of a concession pursuant to an earlier plea offer that he decided not to accept.

Moreover, at the sentencing proceeding, the trial court provided detailed reasons for its 18-month minimum sentences, which were at the lower end of the guidelines range of 10 to 46 months' imprisonment for the breaking and entering conviction. The trial court expressly relied on defendant's extensive criminal record, which included five prior felonies and six prior misdemeanors, and defendant's status as a fourth-offense habitual offender. Additionally, the trial court was particularly concerned that defendant committed the current offenses while on parole. The trial court also observed that according to defendant's own testimony, he made a "conscious decision" to "get wasted[,]" despite the fact that his parole prohibited him from consuming alcohol or drugs. The trial court noted that there was a syringe in defendant's backpack, although the jury was not privy to that information. In discussing a fair sentence in this case, the trial court commented that, given defendant's criminal record, a 46-month minimum sentence would be "very justified," but instead imposed a minimum sentence that was at the lower end of the guidelines range. Therefore, there is no basis for concluding that the trial court imposed a harsher sentence to punish defendant for exercising his right to a jury trial.

## IV. *CROSBY*[2] REMAND

Defendant next argues that he is entitled to a *Crosby* remand because, at sentencing, the trial court was operating under a misconception of law that the sentencing guidelines were compulsory. We disagree.

Because defendant did not object on this basis at sentencing, this issue is unpreserved, and therefore, review is limited to plain error affecting defendant's substantial rights. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).

Breaking and entering with the intent to commit larceny is a Class D felony subject to the legislative sentencing guidelines. MCL 777.16f. The guidelines as scored for this conviction established a minimum sentence range of 10 to 46 months' imprisonment. It is undisputed that

---

[2] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

no judicial fact-finding was involved in scoring the guidelines because defendant was not assessed any points for the offense variables. At the time of sentencing, the trial court was required to impose a minimum sentence within the guidelines range unless it "has a substantial and compelling reason" to depart from the applicable range. MCL 769.34(2) and (3). The trial court sentenced defendant within the guidelines range.

As defendant observes, after he was sentenced, significant changes to Michigan's sentencing scheme were effectuated by the Michigan Supreme Court's decision in *Lockridge*, 498 Mich 358. In that case, the Michigan Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient, in violation of the Sixth Amendment, to the extent that they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." *Id.* at 364. To remedy this deficiency, the *Lockridge* Court held that the guidelines are advisory only. *Id.* at 365.

For an unpreserved *Lockridge* challenge, "all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id*. at 395 (footnote omitted). "To make a threshold showing of plain error that could require resentencing, a defendant must demonstrate that his or her OV level was calculated using facts beyond those found by the jury or admitted by the defendant and that a corresponding reduction in the defendant's OV score to account for the error would change the applicable guidelines minimum sentence range." *Id.* at 399.

Although the guidelines were mandatory at the time defendant was sentenced, there was no judicial fact-finding impacting the minimum sentencing guidelines range because the trial court did not score any of the OVs. Because there is no basis for concluding that judicial fact-finding affected defendant's OV level, defendant cannot establish that his guidelines range was actually constrained by a violation of the Sixth Amendment. Consequently, there is no plain error and no further inquiry is required. *Lockridge*, 498 Mich at 393.

## V. EXPERT WITNESS FEES

Finally, defendant argues that the trial court abused its discretion by denying his motion for fees to obtain an expert in the field of pharmacology. We disagree.

"This Court reviews for abuse of discretion a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert witness." *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006), citing MCL 775.15. An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012).

Authorization for the payment of expert witness fees for an accused is statutorily based. MCL 775.15. The statute leaves the decision to approve the payment of expert witness fees for a defendant to the discretion of the trial court when the accused can demonstrate "that there is a

material witness in his favor . . . without whose testimony he cannot safely proceed to trial . . . [.]" *Id.* To obtain the appointment of an expert witness,

> an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert. *People v Jacobsen*, 448 Mich 639, 641; 532 NW2d 838 (1995). It is not enough for the defendant to show a mere possibility of assistance from the requested expert. [*People v*] *Tanner*, [469 Mich 437, 443; 671 NW2d 728 (2003)]. Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness. *Jacobsen*, [448 Mich] at 641. [*Carnicom,* 272 Mich App at 617.]

The Michigan Rules of Evidence prohibit the admission of evidence that is not relevant. MRE 402. Defendant offers no legal authority supporting the proposition that testimony from a pharmacology expert in this case was relevant. Despite defendant's offered purpose for the expert witness testimony, his arguments both in his motion and at the motion hearing demonstrate that he sought to assert a voluntary intoxication or diminished capacity defense, neither of which were available to defendant to defend himself at trial.

In his motion, defendant argued that expert witness testimony was necessary because defendant's "state of drug and alcohol intoxication" is relevant to "what his intent was at the time of his entering into the factory[,]" and that "the jury should consider the extent to which drugs and alcohol affected the Defendant . . . to ascertain whether the Defendant entered the factory with the intent to steal something . . . [.]" Defense counsel advanced similar arguments at the motion hearing. Thus, defendant clearly sought the expert testimony to negate his specific intent by suggesting that he could not have formed the specific intent to steal because of his voluntary intoxication or diminished capacity caused by his intoxication.

As defendant recognizes, MCL 768.37[3] abolished voluntary intoxication as a defense, subject to one limited exception. Voluntary intoxication is an affirmative defense to a specific intent crime only if the defendant establishes by a preponderance of the evidence "that he or she voluntarily consumed a legally obtained and properly used medication or other substance and did not know and reasonably should not have known that he or she would become intoxicated or impaired." MCL 768.37(2). Defendant does not argue that he did not know or reasonably should not have known that he would become intoxicated or impaired when he consumed alcohol. In fact, defendant testified at trial that he voluntarily consumed the alcohol to get

---

[3] MCL 768.37(1) provides, in pertinent part, as follows:

> Except as provided in subsection (2), it is not a defense to any crime that the defendant was, at that time, under the influence of or impaired by a voluntarily and knowingly consumed alcoholic liquor, drug, including a controlled substance, other substance or compound, or combination of alcoholic liquor, drug, or other substance or compound.

"blasted." Therefore, voluntary intoxication, regardless of how defendant characterizes it, is not applicable to this case, and, therefore, not relevant.

Additionally, defendant's argument for a pharmacology expert also poses a comparison to the defunct defense of diminished capacity. A diminished capacity defense is no longer viable in Michigan. *People v Carpenter*, 464 Mich 223, 226; 627 NW2d 276 (2001). In *Carpenter*, the Michigan Supreme Court observed that the Legislature had enacted a comprehensive statutory scheme concerning defenses based on mental illness or retardation, and held that, as a result, the diminished capacity defense is no longer available. *Id.* 236. Before this legislative activity and *Carpenter*, the diminished capacity defense allowed "a defendant, even though legally sane, to offer evidence of some mental abnormality to negate the specific intent required to commit a particular crime." *Id.* at 232. Here, in spite of his contentions to the contrary, defendant sought to introduce the expert testimony to support a claim that because of his intoxication, which caused "bizarre" behavior, he did not have the intent to steal when he entered the factory. This is indeed what is proscribed by *Carpenter*.

In sum, defendant has failed to demonstrate any error in the trial court's denial of expert witness fees. Because the underlying premise for the expert testimony was unsound, defendant cannot make the requisite showing that an expert would have benefitted the defense or that he could not safely proceed to trial without the expert. Consequently, the trial court did not abuse its discretion when it denied defendant's motion for expert witness fees.

Affirmed.

/s/ Michael F. Gadola
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

-9-