# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHARLES FRANKLIN CLOWER,

Defendant-Appellant.

UNPUBLISHED
May 10, 2018

No. 334943
Wayne Circuit Court
LC No. 15-008003-01-FC

Before: CAVANAGH, P.J., and STEPHENS and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of first-degree premeditated murder, MCL 750.316(1)(a), tampering with evidence, MCL 750.483a(6)(b), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during commission of a felony, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to life imprisonment without parole for the murder conviction, and prison terms of 152 months to 25 years for the tampering with evidence conviction, 75 months to 15 years for the felon-in-possession conviction, and two years for the felony-firearm conviction. We affirm.

## I. FACTS AND PROCEEDINGS

Defendant was convicted of murdering Keon "Kato" Dubois, who was shot three times in the head. Family members began searching for Dubois after he failed to respond to text messages and phone calls on the morning of August 30, 2015. They learned that he had been dropped off at an abandoned home on Marx Street in Detroit in the early morning hours of August 30. The home was formerly owned by relatives of Dubois's friend, Kane Siebert, but it had been lost through foreclosure. However, Siebert and defendant squatted in the home. Dubois's family members requested information from defendant and Siebert. Defendant gave evasive and conflicting information regarding Dubois's whereabouts. Siebert told Dubois's sister that he saw defendant shoot Dubois with a rifle in an upstairs bedroom of the Marx Street home, where Dubois and Siebert were sleeping. On September 2, 2015, Dubois's body was found in the back yard of the home, near a burned mattress. Dubois had been shot three times in the head.

Detroit Police officers questioned Siebert on September 3, 2015. The following day, Siebert was questioned under oath pursuant to an investigative subpoena. At trial, Siebert testified that he and Dubois went to sleep in the upstairs bedroom of the Marx Street home at

-1-

approximately 5:00 a.m. on August 30. Siebert said he was awakened by the sound of gunshots, and then saw defendant with the rifle pointed at Dubois.

Over the course of the proceedings, defendant made three requests for new counsel. The trial court granted the first two requests, but denied the third. At trial, midway through defense counsel's cross-examination of Siebert, defendant declared his intention to represent himself for the remainder of the trial. The trial court questioned defendant to ascertain that his decision was made knowingly, intelligently, and voluntarily, during which the court repeatedly advised defendant of the risks and disadvantages of self-representation, but defendant persisted in representing himself. Defendant's appointed counsel was permitted to remain as advisory standby counsel, and counsel cross-examined some police witnesses and questioned defendant on direct examination when defendant testified.

The prosecution relied principally on Siebert's testimony, but also presented the testimony of Michael Baxter, who stated that after Dubois's shooting death defendant sent him text messages requesting Baxter's assistance to leave Detroit because he had killed someone. Baxter responded with the message, "I can't help you with something like this because that would affect me negatively. Who the hell did you kill?" Baxter received a response from defendant's cell phone that stated: "just help money and it was Kato. Please help me please with the money." The defense theory at trial was that Dubois's homicide was motivated by gang rivalry. Defendant maintained that Siebert and most persons in the neighborhood belonged to the Blood gang, whereas Dubois was a member of the rival GD gang.

## II. SUBSTITUTE COUNSEL

Defendant argues that the trial court erred by denying his request for substitute counsel to replace his third attorney, and by denying his request for substitute standby counsel. The trial court's decision regarding substitution of counsel is reviewed for an abuse of discretion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015).

The federal and state constitutions guarantee the right to counsel in all criminal prosecutions. US Const, Am VI; Const 1963, art 1, § 20; *People v Marsack*, 231 Mich App 364, 372; 586 NW2d 234 (1998). But while an indigent defendant is guaranteed the right to counsel, a defendant is not necessarily guaranteed the attorney of his or her choice. *Traylor*, 245 Mich App at 462 (citation omitted). An indigent defendant "is not entitled to counsel of his choice nor is he entitled to different counsel whenever and for whatever reason dissatisfaction arises with counsel provided for him." *People v Bradley*, 54 Mich App 89, 95; 220 NW2d 305 (1974).

A defendant is entitled to substitution of defense counsel, however, if discharge of appointed counsel is for (1) good cause and (2) does not unreasonably disrupt the judicial process. *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012) (quotation marks and citation omitted). "Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest." *People v McFall*, 309 Mich App 377, 383;

873 NW2d 112 (2015) (citation and quotation marks omitted). "A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Id*. at 383 (citation and quotation marks omitted). "A difference of opinion regarding "a fundamental trial tactic" could support sufficient good cause, but disagreements over defense strategy, "including what evidence to present and what arguments to make, are matters of trial strategy, and disagreements with regard to trial strategy or professional judgment do not warrant appointment of substitute counsel." *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011).

A trial court is obligated to inquire about the truth of a defendant's allegations that there is a dispute which has led to the destruction of communication and a breakdown in the attorney-client relationship. *People v Bass*, 88 Mich App 793, 802; 279 NW2d 551 (1979). "When a defendant asserts that his assigned lawyer is not adequate or diligent or asserts . . . that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusions." *People v Ginther*, 390 Mich 436, 441-442; 212 NW2d 922 (1973).

In this case, defendant failed to establish good cause for substitution of his third attorney. Defendant never identified any disagreement regarding a fundamental trial tactic. He made only general complaints that none of his attorneys had pursued strategies he believed would be effective. He did not identify witnesses he wanted interviewed. Defendant did not suggest any viable defense strategies that were not already being pursued by counsel. At most, he demonstrated nonspecific doubts and disagreements with trial counsel's professional judgment. Before defendant opted to represent himself, trial counsel pursued the same general strategy that defendant attempted to pursue himself, namely attacking Siebert's credibility and eliciting testimony to suggest that Siebert belonged to a rival gang and therefore had a motive to kill Dubois and blame defendant.

Defendant's complaints of a breakdown in the attorney-client relationship were the same generalized complaints he raised about his first and second attorneys. Trial counsel's cross-examination of Siebert up to the time that defendant asserted his right to self-representation did not corroborate defendant's complaint that counsel failed to review discovery and failed to prepare for trial. Defendant's claim that the trial court failed to make sufficient inquiry about his dissatisfaction with counsel is without merit. Defendant was permitted ample opportunity to voice his complaints.

Defendant argues that the trial court should have granted substitute standby counsel, instead of "forcing" him to accept the attorney whose representation he rejected. Defendant had the right to proceed with counsel or to represent himself, Const 1963, art 1, § 13, but he did not have the right to both. *People v Dennany*, 445 Mich 412, 443; 519 NW2d 128 (1994). Having elected to represent himself, defendant had no right to standby counsel. *Id*.

III. SELF-REPRESENTATION

Defendant argues that the trial court erred when it allowed him to represent himself without sufficiently ascertaining that he was prepared to represent himself. The record does not support this argument.

In *People v Campbell*, 316 Mich App 279; 894 NW2d 72 (2016), this Court reviewed the safeguards a trial court must use to protect a defendant from involuntarily or unwittingly waiving his right to counsel and opting to represent himself:

> When confronted with a defendant who wishes to represent himself or herself, the trial court must determine that the three requirements stated in *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), have been met: the court must ensure (1) that "the defendant's request is unequivocal," (2) that "the defendant is asserting the right knowingly, intelligently, and voluntarily after being informed of the dangers and disadvantages of self-representation," and (3) that "the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business." *People v Willing*, 267 Mich App 208, 219; 704 NW2d 472 (2005), citing *Anderson*, 398 Mich at 367-368; 247 NW2d 857. Similarly, "[a trial court] may not permit the defendant to make an initial waiver of the right to be represented by a lawyer" unless the trial court first advises the defendant "of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation[.]" MCR 6.005 (D)(1). The court must also "offer [] the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer." MCR 6.005(D)(2). [*Id.* at 284.]

"Trial courts must substantially comply with the requirements stated in *Anderson* and MCR 6.005(D)." *Id.* "[I]t is a long-held principle that courts are to make every reasonable presumption *against* the waiver of a fundamental constitutional right, including the waiver of the right to the assistance of counsel." *Id.* at 285, quoting *People v Russell*, 471 Mich 182, 188; 684 NW2d 745 (2004).

Defendant acknowledges that the trial court satisfied the requirements enumerated in *Campbell* and MCR 6.005(D). Defendant argues that before allowing him to waive his right to counsel and represent himself, the trial court was obligated to inquire and ascertain that trial counsel had provided all discovery to defendant. Defendant does not cite any authority requiring a trial court to make this specific inquiry. Regardless, although defendant maintains that he was unaware of Siebert's investigative subpoena testimony until after Siebert testified, the record discloses that the prosecutor disclosed Siebert's investigative testimony to defense counsel before trial and nothing in the record indicates that this information was withheld from defendant. The discussions among defendant, the trial court, defense counsel, and the prosecutor all indicate that defendant was confusing the investigative subpoena transcript with Siebert's earlier police interview, which was not given under oath. To the extent that defendant was confused about the scope and nature of the evidence, the trial court's repeated warnings that

defendant would be held to the same standards as an attorney, and that his lack of training, education, and experience would put him at a significant disadvantage, come to bear.

Defendant argues generally that the trial court erred in allowing him to represent himself when he was not prepared or trained to do so. The trial court went beyond inquiring that defendant knowingly, understandingly, and voluntarily waived his right to counsel. The court repeatedly, and strongly, advised defendant against attempting to represent himself, and explained to him the risks in doing so, including that he did not have any training as a lawyer, yet he would be expected to follow the rules of evidence and criminal procedure. The court also pointed out that defendant had no experience with cross-examination, and the importance of properly presenting and preserving issues to protect his appellate rights. In addition, the court emphasized the seriousness of the charges, including that a conviction of first-degree murder would result in imprisonment for life without the possibility of parole. Despite these warnings, which were mentioned repeatedly, defendant remained convinced that he was capable of representing himself and that he was better prepared than trial counsel. Because the trial court fully and adequately advised defendant of the risks and disadvantages of self-representation, defendant has not established any error on this basis.

## IV. RECALL OF WITNESS

Defendant argues that the trial court erred in denying his request to recall Siebert for further cross-examination after defendant allegedly became aware of Siebert's investigative subpoena testimony. We review the trial court's denial of a request to recall a witness for an abuse of discretion. *Potts v Shepard Marine Constr Co*, 151 Mich App 19, 26; 391 NW2d 357 (1986).

Defendant has not demonstrated that the trial court abused its discretion, given that defendant had already been permitted to cross-examine Siebert at length, even to the point that the trial court warned him that the questioning was becoming repetitive, and that the court could exercise discretion to limit examination that was cumulative or irrelevant. Moreover, defendant has not demonstrated that further examination was necessary to establish a substantial defense. Cf. *People v Hopson*, 178 Mich App 406, 412; 444 NW2d 167 (1989) (failure to adequately cross-examine a witness constitutes ineffective assistance of counsel only when it deprives the defendant of a substantial defense); *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (a substantial defense is one that might have made a difference in the outcome of the trial).

On appeal, defendant does not state what additional questions he would have asked Siebert if he had been allowed to recall Siebert as a witness. At trial, defendant stated that he would have cross-examined Siebert about his explanation for why his fingerprints might be on Dubois's body. However, defendant fails to explain why this testimony would have been significant, particularly considering that there was no testimony regarding fingerprints on Dubois's body, or efforts to find fingerprints on his body, or testimony whether latent fingerprints could even be obtained from a body. Accordingly, we reject this claim of error.

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which have merit.

## A. PROSECUTORIAL MISCONDUCT

Defendant asserts that the prosecutor presented Siebert's perjured testimony and altered evidence to obtain his conviction. Because defendant did not raise these claims of misconduct in the trial court, this issue is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011).

A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). A conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Smith*, 498 Mich at 476. Although defendant identifies alleged conflicts between Siebert's police statement, investigative subpoena testimony, and testimony at trial, such conflicts do not constitute prosecutorial misconduct where there is no evidence that the prosecutor attempted to conceal the contradictions and the defense was permitted sufficient opportunity to impeach the witness with prior inconsistent statements. See *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998).

Defendant's argument focuses on Siebert's statements and testimony regarding what he saw and heard when he was awakened by the gunshots. Siebert was testifying about abruptly wakening to the sound of gunshots. In each of Siebert's accounts, Siebert testified that he awoke to the sound of gunshots, and saw defendant with a rifle. Any perceived discrepancies regarding the specific sequence of each shot and the moment Siebert awoke, and regarding whether Siebert saw defendant fire the rifle or saw defendant holding the rifle immediately after shots were fired, do not establish that Siebert gave false testimony. Imprecision with respect to details does not establish deliberate falsehood. Moreover, the alleged inconsistencies were not concealed from the defense, and trial counsel in fact explored the alleged inconsistencies in his cross-examination of the witness. These circumstances do not support defendant's claim of misconduct by the prosecutor.

Defendant also argues that the prosecutor tampered with evidence. He seeks an evidentiary hearing "to suppress tainted text messages." Defendant argued at trial that the prosecutor should have disclosed text messages taken from Baxter's phone, but he subsequently abandoned this argument when he conceded that he had no information that text messages were actually deleted.

Defendant further argues, however, that exculpatory videos were deleted from his phone. Defendant was permitted an opportunity to explore this issue at trial. The police witness who extracted the data from defendant's phone testified that all of the data was dumped to a disc, which was provided to defense counsel. The witness denied deleting or altering any videos or

other data from the phone. Conversely, defendant claimed that his phone had videos that would support his claims of gang membership by Siebert and Dubois, but the videos were deleted. It was up to the jury to consider and weigh the police testimony explaining the process for extracting data from defendant's phone, and to resolve the conflicting claims regarding whether videos or other data was deleted. Defendant has not established any misconduct by the prosecutor with respect to this issue.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to support his convictions. "This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Perry*, 317 Mich App 589, 599; 895 NW2d 216 (2016). This Court reviews "the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt." *Id*. "This Court will not interfere with the jury's role of determining the weight of evidence or the credibility of witnesses." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). The reviewing court must draw all reasonable inferences in support of the jury's verdict. *People v Bulls*, 262 Mich App 618, 623-624; 687 NW2d 159 (2004).

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *Bennett*, 290 Mich App at 472. MCL 750.483a(5)(a) provides that a person shall not "[k]nowingly and intentionally remove, alter, conceal, destroy, or otherwise tamper with evidence to be offered in a present or future official proceedings."

The evidence indicated that Dubois was shot while he was sleeping. Seibert's testimony identified defendant as the shooter. Defendant's text messages to Baxter further supported his identity as the person who killed Dubois. Defendant's entry into the bedroom with a rifle, and the firing of three gunshots to Dubois head, supported an inference of premeditation and deliberation. Defendant did not dispute that he was ineligible to possess a firearm pursuant to MCL 750.224f. The homicide was undisputedly committed with a firearm, MCL 750.227b. Testimony that Siebert was shot while lying on a mattress and that a burned mattress was found behind the house supported an inference that defendant knowingly and intentionally destroyed the mattress because it was evidence that could be used in a homicide prosecution.

Although defendant argues that Siebert's testimony was false, the determination of Siebert's credibility was for the jury to resolve. See *McRunels*, 237 Mich App at 181. Prosecution witnesses testified that Baxter made screen shots of the text messages exchanged between him and defendant. Defendant failed to demonstrate that these screen shots had been altered to misrepresent the text messages. The police matched Baxter's screen shots to the messages taken from defendant's cell phone. Defendant's argument that Baxter's cell phone might have disproved or undermined the prosecutor's evidence of the text messages is entirely speculative, and technologically improbable. In sum, the evidence was sufficient to support defendant's convictions.

## C. SEARCH OF DEFENDANT'S CELL PHONE

Defendant argues that police illegally seized and searched his cell phone. Defendant did not raise this issue in a motion to suppress in the trial court; therefore, he has the burden of demonstrating a plain error affecting his substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"The United States and the Michigan Constitutions guarantee the right to be secure against unreasonable searches and seizures." *People v Henry (After Remand)*, 305 Mich App 127, 137; 854 NW2d 114 (2014), citing US Const, Am IV, and Const 1963, art 1, § 11. "The Michigan constitutional provision is generally construed to afford the same protections as the Fourth Amendment." *People v Antwine*, 293 Mich App 192, 194-195; 809 NW2d 439 (2011) (citation omitted). A warrantless search is deemed unreasonable in the absence of probable cause and the applicability of an exception to the warrant requirement. *Henry*, 305 Mich App at 137. In *Riley v California*, ___ US___; 134 S Ct 2473; 189 L Ed 2d 430 (2014), the United States Supreme Court stated, "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant."

Here, there is no indication in the record whether the search of defendant's cell phone was done without a warrant or pursuant to a search warrant. Accordingly, there is no basis for finding a clear or obvious error. See *Carines*, 460 Mich at 763. Moreover, a police witness testified at trial that he obtained screen shots of defendant's text messages from Baxter. He then verified the text messages pursuant to a search warrant served on the telecommunications carrier. Because this evidence was lawfully obtained from other sources, defendant has not established that the evidence obtained from his cell phone affected his substantial rights.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Brock A. Swartzle