*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL DAVID MCKERCHIE,

Defendant-Appellant.

UNPUBLISHED
November 19, 2024
10:54 AM

No. 367418
Ingham Circuit Court
LC No. 20-000914-FH

Before: MALDONADO, P.J., and M. J. KELLY and GARRETT, JJ.

PER CURIAM.

Defendant, Michael McKerchie, appeals as of right his convictions of escape while awaiting trial for a felony, MCL 750.197(2), and malicious destruction of police property, MCL 750.377b. McKerchie was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 6 to 15 years' imprisonment for each conviction.[1]  For the reasons stated in this opinion, we affirm.

## I.  BASIC FACTS

In September 2020, McKerchie was pursued by the police after he stole a vehicle.  During the pursuit, he crashed into another vehicle, seriously injuring both the other driver and himself. Although McKerchie attempted to flee on foot, he was apprehended by the police.  Because his spleen was ruptured in the crash, he underwent surgery to remove it.  He was then housed in the Ingham County Jail awaiting trial on four felony charges arising from the incident.

On November 12, 2020, McKerchie escaped from the jail and stole another vehicle. Although a taunting note that he left in his jail cell suggested that he was leaving the state, he was spotted driving yet another stolen vehicle in Eaton Rapids on November 21, 2020.  Again, he crashed the vehicle he was driving while being pursued by the police.  When he was arrested, he stated, "That old ass jail aint going to hold me.  I'll do it again, watch me."  He also kicked out the

---

[1] That sentence is to be served consecutively to the sentence imposed in Ingham Circuit Court No. 20-729-FH.

-1-

center barrier in the police vehicle and spat on the deputy. At the hospital, he threatened to assault and spit on hospital staff until he was sedated.

Before trial, McKerchie filed a notice of his intent to present duress and necessity as defenses. He argued that the removal of his spleen left him particularly vulnerable to serious injury or death from "COVID-19" and that he particularly was at risk for contracting it in the jail. The prosecution objected. Following a hearing, the trial court determined that McKerchie could not present a duress or a necessity defense because he had only presented a generalized risk of COVID and not a "specific person that has threatened him," had not first attempted to complain to the courts or the authorities regarding the allegedly dangerous condition he was escaping from, and had not reported himself to the authorities once he had reached a place of safety.

At trial, McKerchie was represented by a lawyer on the first day of trial, but represented himself on the second and third days. During his testimony, he admitted that he was in a stolen vehicle, got into a crash with another individual, and had his spleen surgically removed as a result of injuries he sustained in the crash. He stated that his immune system was compromised and that, over time, he learned that he was "more likely to die from viruses." He then indicated that there was an "outbreak" after he was in jail for approximately 45 days. He stated that he was "scared for [his] life," so he "cut the window out" and ran. The jury convicted him as charged. This appeal follows.

## II. SELF-REPRESENTATION

## A. STANDARD OF REVIEW

McKerchie argues that the trial court violated his constitutional right to be represented by a lawyer at trial by improperly allowing him to represent himself on the second and third days of his trial. When examining the waiver of the right to representation by a lawyer, "the question is whether the defendant gave a knowing, intelligent, and voluntary waiver." *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). The court's factual findings related to waiver are reviewed for clear error. *Id*. A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court erred. *Id*. Application of the facts to the law is a question of law reviewed de novo. *Id*.

## B. ANALYSIS

"The right of self-representation is secured by both the Michigan Constitution, Const 1963, art 1, § 13, and by statute, MCL 763.1." *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013). The "right is also implicitly guaranteed in the [S]ixth [A]mendment to the United States Constitution." *People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976). "Choosing self-representation necessarily requires waiving the right to be represented by counsel." *People v King*, 512 Mich 1, 11; 999 NW2d 670 (2023). In order to be constitutional, the waiver must be made knowingly, intelligently, and voluntarily. *Id*.

"Before granting a defendant's request [to represent himself or herself], a trial court must substantially comply with the factors set forth in *Anderson*, 398 Mich App at 367-368, and MCR 6.005(D) for a defendant to effectuate a valid waiver of the right to counsel." As restated in *Dunigan*, the *Anderson* requirements are as follows:

> (1) a defendant must make an unequivocal request to represent himself, (2) the trial court must determine that the choice to proceed without counsel is knowing, intelligent, and voluntary, and (3) the trial court must "determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." [*Dunigan*, 299 Mich App at 587 (quoting *Anderson*, 398 Mich at 367-368 ).]

MCR 6.005(D), in turn, provides that a court may not permit a defendant to waive his right to self-representation without first:

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.
> . . .

On appeal, McKerchie contends that the trial court failed to establish that his request to represent himself was unequivocal and that it was knowingly, intelligently, and voluntarily made. We disagree.

Before trial, McKerchie made several requests to represent himself. The trial court advised McKerchie to speak with his lawyer and stated that, if McKerchie still wished to represent himself, the court would consider the request. Thereafter, on the first day of trial, McKerchie again stated that he wanted to represent himself. The trial court informed McKerchie of the charges against him and their penalties. Additionally, when questioned on the record by his lawyer, McKerchie affirmed his willingness to represent himself and his understanding of self-representation, including that he would be held to the same standard of conduct as a lawyer. However, McKerchie then told the trial court that he would choose to be represented by a lawyer if he had the freedom to pick his lawyer. He added that he was unhappy with his lawyer's representation and with the representation of the public defender's office. The court determined, at that time, that McKerchie was not making an unequivocal request to represent himself, so it denied his request. McKerchie's lawyer, therefore, represented him on the first day of the trial.

On the second day, McKerchie stated multiple times that he did not want to be represented by a lawyer and that he "would like to represent [himself] fully." The court again permitted McKerchie a chance to discuss the decision with his lawyer. Subsequently, the court engaged in the following colloquy with McKerchie:

> *The Court*: Yesterday I reviewed with you, in connection with this request for self-representation, the charges that are asserted against you and the penalties. Do you recall that?
>
> *McKerchie*: Yes, Your Honor.
>
> *The Court*: You don't have a question about that. You know what the charges are and you know the penalties; correct?
>
> *McKerchie*: Yes, Your Honor.

McKerchie also affirmed that he had spoken with his lawyer regarding "the wisdom or potential pitfalls of self-representing." He added again, "I wish to represent myself."

The court then explained to McKerchie the risks of self-representation, noting that McKerchie would have to follow the court rules and the rules of evidence. McKerchie stated that he knew how to draft and submit motions, how to present his own testimony when representing himself, and that he understood that security reasons would prevent him from approaching the podium. McKerchie also asked about the procedure for objections being argued outside the jury's presence. When the court pointed out that that was another logistical difficulty in self-representation, McKerchie responded, "But it's my right." Ultimately, the court found that McKerchie's waiver was knowing, intelligent, and voluntary, and that, unlike the day before, the request was now unequivocal.

Given the record in this case, which shows that McKerchie was advised at length of the risks of self-representation and of what would be expected of him should he do so, and given his responses acknowledging and accepting those risks, the trial court did not clearly err by finding that his waiver was knowing, intelligent, and voluntary. Moreover, in light of his statements that he did not want to be represented by a lawyer and that he wanted to represent himself, the court did not clearly err by finding that the decision was unequivocal.

McKerchie suggests that the requirements of MCR 6.005(D)(1) were not satisfied because his lawyer, rather than the court, asked some of the questions, and because the exchange occurred on the first day of trial. We discern no reversible error, however. On questioning from his lawyer, McKerchie confirmed his awareness of some of the risks inherent in self-representation on the first day of trial. On the second day of trial, the court informed McKerchie of the same risks, as well as additional risks. Nothing in the court rule requires that the court cannot conduct the required inquiry on multiple days. Moreover, although the rule requires that the court "advise" the defendant of the risks, only substantial compliance with MCR 6.005(D)(1) is required. *King*, 512 Mich at 11. We conclude that substantial compliance with the court rule occurs when the defendant's lawyer, rather than the court, advises the defendant of the risks during questioning that occurs before the trial court.

Further, the court properly advised McKerchie of the charges before him and the maximum possible sentences for each charge, as enhanced by the fourth-offense habitual offender notice. The court also advised him that, if he were convicted, his sentence would "be served after the end of the sentence that was imposed for the crime for which you were imprisoned." Although that

exchange occurred on the first day of trial, the court confirmed with McKerchie on the following day that McKerchie recalled being advised of the charges and the maximum possible sentence he could receive if convicted. The only temporal limitation imposed by MCR 6.005(D)(1) is that the court is to advise the defendant of the risks involved in self-representation, as well as the charge, maximum possible prison sentence, and any mandatory minimum sentence *before* permitting a defendant to make an initial waiver of the right to be represented by a lawyer. Accordingly, given that the court advised McKerchie of the charge and the maximum possible sentences, including the mandatory consecutive nature of the sentences before it permitted McKerchie to waive his right to a lawyer, the court complied with MCR 6.005(D)(1).

## III. DURESS AND NECESSITY DEFENSES

### A. STANDARD OF REVIEW

McKerchie next argues that the trial court abused its discretion by precluding him from presenting the defenses of duress and necessity. He contends that the court's decision deprived him of his constitutional right to present a defense. "A trial court's decision whether to admit or exclude evidence will be affirmed in the absence of a clear abuse of discretion." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). "Whether a defendant was denied his constitutional right to present a defense is a question of law we review de novo." *Id*.

### B. ANALYSIS

"Duress is a common-law affirmative defense." *People v Lemons*, 454 Mich 234, 245; 562 NW2d 447 (1997). "It is applicable in situations where the crime committed avoids a greater harm." *Id*. at 246. As explained in *Lemons*,

> The rationale of the defense of duress is that, for reasons of social policy, it is better that the defendant, faced with a choice of evils, choose to do the lesser evil (violate the criminal law) in order to avoid the greater evil threatened by the other person. *Id*., quoting 1 LaFave & Scott, Substantive Criminal Law, § 5.3, pp 614-615.]

"In order to properly raise the defense, the defendant has the burden of producing . . . some evidence from which the jury could conclude" each element. *Id*. at 246-247. The elements are as followed:

> A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;
>
> B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;
>
> C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and
>
> D) The defendant committed the act to avoid the threatened harm. [*Id*. at 623.]

In this case, McKerchie presented an offer of proof before trial in support of his duress defense. He represented that his spleen had been removed, which caused him to be immune compromised; that there was a "COVID" outbreak at the jail; and that the threat posed by "COVID" made him fear for his life. He did not, however, present an offer of proof showing that anyone was threatening to expose him to "COVID." That is, his rationale for escaping did not demonstrate that there was any threatening *conduct* by another. Because the elements of the defense of duress require threatening conduct by another, and because McKerchie presented no evidence supporting that element, he did not properly raise the defense. *Id*. at 246-247. The court, therefore, did not err by precluding him from raising duress as a defense at trial.

Moreover, the defense of duress in breaking prison is codified in MCL 768.21b(4), which provides as follows:

> In determining whether or not the defendant broke prison while under duress the jury or court may consider the following conditions if supported by competent evidence:
>
> (a) Whether the defendant was faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future.
>
> (b) Whether there was insufficient time for a complaint to the authorities.
>
> (c) Whether there was a history of complaints by the defendant which failed to provide relief.
>
> (d) Whether there was insufficient time or opportunity to resort to the courts.
>
> (e) Whether force or violence was not used towards innocent persons in the prison break.
>
> (f) Whether the defendant immediately reported to the proper authorities upon reaching a position of safety from the immediate threat.

At the hearing on the prosecution's objection to the defense of duress, McKerchie's lawyer described complaints that McKerchie made to his therapist and a deputy. He did not provide any elaboration as to the formality of the complaints, nor how any concerns regarding "COVID" were discussed with them. Further, McKerchie's lawyer advised that McKerchie had been in the process of turning himself in when he was arrested. Yet, the record reflects that the escape occurred on November 12, 2020, and he was apprehended on November 21, 2020, *after he crashed another stolen vehicle while being pursued by the police*. When he was arrested, he boldly proclaimed that the jail could not contain him and that he would escape again. In light of these undisputed facts, the representation that he was in the process of turning himself lacks credibility. The court found that McKerchie had not shown the necessary elements of reporting his concerns to the authorities or the courts and of *immediately* reporting to the proper authorities after he reached a position of safety from the immediate threat. Those findings are not clearly erroneous. On this record, McKerchie cannot establish the elements of duress in breaking prison under MCL 768.21b(4).

"The defense of necessity requires a present, imminent and impending threat of death or serious bodily harm. A threat of future injury is insufficient to support a necessity defense." *People v Walker*, 167 Mich App 377, 381; 422 NW2d 8 (1988), overruled on other grounds 456 Mich 693 (1998).[2] The difference between the defenses of duress and necessity is that "the source of compulsion for duress is the threatened conduct of another human being, while the source of compulsion for necessity is the presence of natural physical forces." *People v Hubbard*, 115 Mich App 73, 77; 320 NW2d 294 (1982).[3] Here, McKerchie presented nothing in his offer of proof to show that "COVID" posed a present, imminent, and impending threat of death or serious bodily harm. His contentions amounted to a generalized fear that he might die or be seriously harmed at some point in the future if he were to be become infected with "COVID" as a result of the outbreak at the jail. That is insufficient to support the defense of necessity. The trial court, therefore, did not err by precluding that defense.

## IV. SENTENCING

### A. STANDARD OF REVIEW

McKerchie challenges the trial court's decision to impose an outside-the-guidelines sentence. This Court reviews for reasonableness a trial court's decision to impose an outside-the-guidelines sentence. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). An abuse of discretion exists when the trial court's decision falls outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

### B. ANALYSIS

The sentencing court must consult the advisory sentencing guidelines, which "embody the principle of proportionality," when determining what sentence to impose. *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017). When determining whether an outside-the-guidelines sentence "is more proportionate than a sentence within the guidelines range," the court may consider the following factors: "(1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the

---

[2] "Although published decisions of this Court issued prior to November 1, 1990, are not strictly binding on this Court, all published decisions of this Court are precedential under the rule of stare decisis and generally should be followed." *Davis v Secretary of State*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362841); slip op at 9 n 10.

[3] There is no recent binding caselaw applying the necessity defense and distinguishing it from the defense of duress. Further, although there is a model criminal jury instruction on duress, M Crim JI 7.6, no such instruction exists for necessity. In any event, we follow *Hubbard's* guidance indicating that the defense of necessity as is distinct from the defense of duress.

guidelines but given inadequate weight." *Id.* Factors not considered by the guidelines include "the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *People v Lawhorn*, 320 Mich App 194, 207; 907 NW2d 832 (2017) (quotation marks and citation omitted). See also *People v Abcumby-Blair*, 335 Mich App 210, 243; 966 NW2d 437 (2020) (stating that an outside-the-guidelines sentence may be warranted "when the guidelines minimum sentence range did not adequately account for a defendant's prolific criminal history, recidivism, and poor prospects for rehabilitation."). "[I]f the seriousness of the defendant's conduct and his criminal history have already been taken into account in determining the guidelines range, they cannot be used to justify the trial court's departure, unless the trial court finds that these factors have been given inadequate or disproportionate weight." *People v Babcock*, 469 Mich 247, 258 n 12; 666 NW2d 231 (2003).

McKerchie's minimum guidelines range was 12 to 48 months. The trial court sentenced him to a minimum sentence of 72 months. In doing so, the court found that the guidelines did not adequately account for the nature and extent of McKerchie's criminal history and his conduct while incarcerated. The trial court also considered the prosecution's argument related to the need for punishment, rehabilitation, protection of society or the community, and deterrence to others. The court further noted McKerchie's lack of remorse, his misconduct while in custody, and his lack of potential for reformation.

The record supports the court's findings. McKerchie has a history of escape, having left without permission from residential facilities on three occasions, escaped a juvenile facility twice, and escaping from a prison on a prior occasion. He demonstrated no remorse for his actions. Rather, he left a note for the deputy in charge of his care, in which he boasted about how he had planned and executed his escape. He testified that the purpose of the note was to get the deputy fired. When he was apprehended several days later, he told the officers that the "old ass jail" would not hold him and advised that he would "do it again." Moreover, the record reflects that while in custody at the jail and hospital, McKerchie would make threatening statements, would throw feces and urine, and would spit at those in his vicinity. At times, he would punch at the deputies attempting to move him. His ill-behavior was not restricted to the jail and the hospital. To be sure, at a break in the sentencing hearing, he broke a window in his receiving cell at the courthouse. He also kicked the barrier in the police car when he was apprehended in the instant case so that he could spit on the officer. Further, in his jail cell, he attempted to disable the cameras so that he could not be observed.

McKerchie also demonstrated that he is a danger to public safety. He was in jail as a result of stealing a vehicle, crashing it into another vehicle and seriously injuring himself and the driver of the other vehicle. Immediately upon escaping from jail, he stole another vehicle. And when the police tried to apprehend him, he sped away in yet another stolen vehicle, which he again crashed. Although no one was injured in the second crash, the record reflects that it occurred in a soccer field, which is an area that is not isolated from the public. His actions demonstrate a complete disregard for public safety. The guidelines only accounted for the existence of his prior offenses, not their striking similarity to the circumstances leading to his apprehension after he escaped.

Overall, when fashioning McKerchie's sentence, the court found that McKerchie was a "walking terror," who had "acted out at pretty much every opportunity." The court considered that, in light of McKerchie's pattern of conduct, he was unlikely to be rehabilitated. In light of the record in this case, the court's decision to impose an outside-the-guidelines sentence was warranted, as was the extent of the departure imposed.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Kristina Robinson Garrett